Russell **GAINES** and Southwest Guaranty Mortgage Corp., Petitioners,

v.

Roger **KELLY**, Respondent.

No. 05–1092.

Supreme Court of Texas.

Argued Dec. 5, 2006.

Decided Aug. 24, 2007.

Janiece Longoria, Joseph Robert Larsen and Keith Robert Lorenze, Ogden, Gibson, White, Broocks & Longoria, L.L.P., Houston, TX, for Petitioners.

Michael J. Rogers, Jeffrey S. Davis, Michael J. Rogers, P.C., Cleburne, TX, and Tom P. Briggs, Berry, Briggs, Brown & Berkley, Dallas, TX, for Respondent.

Richard P. Corrigan, San Antonio, TX, for Other.

Justice MEDINA delivered the opinion of the Court.

In this appeal from a no-evidence summary judgment, we must determine whether representations, allegedly made

by a mortgage broker that a loan would be funded, may be attributed to a lender for purposes of a borrower's fraud claim against that lender. The court of appeals, with one justice dissenting, concluded that there was evidence that the mortgage broker had apparent authority to speak for the lender on this subject and, accordingly, reversed the trial court's summary judgment in the lender's favor. 181 S.W.3d 394. We, however, agree with the trial court's summary judgment because there is no evidence that the mortgage broker had apparent authority either to negotiate the terms of the loan or otherwise commit the lender. Accordingly, we reverse the court of appeals' judgment and render judgment that the borrower take nothing.

## I

In December 1998, Roger Kelly signed an Advisory Fee Agreement with Robert Thompson, acting on behalf of Commercial Realty Advisors, Inc., to assist him in obtaining financing for a 31–acre tract in Burleson, Texas. In his agreement with Thompson and Commercial Realty, Kelly stated that he needed to obtain "mortgage financing for the purpose of refinancing and developing" the property. Although Kelly did not own the property, he held a lease and an option to purchase, the result of previous litigation involving the property.

Thompson approached Russell Gaines, an officer of Southwest Guaranty Mortgage Corp., about a loan for Kelly, providing Gaines with preliminary information about the proposed transaction. Gaines in turn provided Thompson with a loan application that Thompson delivered to Kelly's attorneys. Kelly completed the application and returned it to Thompson, who delivered it to Gaines. A few days later, Thompson agreed to do the appraisal on the property at Gaines' request and with-

drew as Kelly's mortgage broker, notifying Kelly of this in writing on December 11, 1998.

Kelly's attorneys, however, continued to press Gaines for a loan commitment because of the imminent expiration of Kelly's option on the property. According to Gaines, Kelly's attorneys represented, among other things, that Kelly had an ownership interest in the property, that Kelly needed the loan for refinancing, and that the property had already been platted and several lots pre-sold. On December 23, Southwest Guaranty issued a thirty-day loan commitment, identifying Kelly and his father-in-law as borrowers, conditioned upon receipt of several items, including a title report.

When the subsequent title report indicated that Kelly did not have an ownership interest in the 31–acre tract, Gaines asked for additional documentation concerning Kelly's ownership and the pre-sold lots. Kelly's attorneys, however, insisted that Southwest Guaranty fund the loan, and, when Gaines declined, Kelly promptly filed suit.

Kelly named Gaines and Southwest Guaranty (hereafter "Gaines") and Thompson and Commercial Realty (hereafter "Thompson") as defendants, alleging breach of contract, fraud, and negligence. He claimed that Gaines' failure to fund the loan caused him financial loss because he had no time to seek alternative financing, but instead was forced to reduce his interest in the property by taking on additional partners. After the suit had been pending for three years, Gaines and Thompson filed separate no-evidence motions for summary judgment. Kelly thereafter amended his pleadings, and Gaines filed a second no-evidence motion, at which time the trial court granted Gaines' and Thompson's respective motions and rendered judgment for them. Kelly appealed.

The court of appeals affirmed the summary judgment[1] for Gaines in part, agreeing that there was no evidence of negligence or breach of contract, and reversed it in part, disagreeing that there was no evidence of fraud. 181 S.W.3d at 408, 412. In his fraud claim, Kelly alleged that Thompson told him during the application process that the loan was a "done deal" and that he relied on this false statement to his financial detriment. *Id.* at 412. The court of appeals concluded that the summary judgment was erroneous as to fraud because there was some evidence that Thompson was Gaines' agent and some dispute about whether Thompson's "done deal" comment could be attributed to Gaines. *Id.*

In analyzing Gaines' potential responsibility for this comment, the court of appeals framed the issue as whether there was evidence that Thompson was acting as Gaines' agent "for purposes of negotiating the loan." *Id.* at 408. The court then concluded that Thompson's agency remained in dispute and could not be determined by summary judgment because the summary-judgment evidence indicated that Thompson had authority to act "as an intermediary to process [the] loan paperwork with Kelly and to explain to Kelly [the] requirements for securing the loan." *Id.* at 409. The court's analysis, however, omits the connection between this evidence and the agency issue previously framed; that is to say, the court fails to explain why evidence that Gaines used Thompson to deliver and explain the loan paperwork is also evidence of Thompson's apparent authority to negotiate the loan or commit Gaines to the transaction.

## II

■ An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Hester Int'l Corp. v. Fed. Republic of Nig.,* 879 F.2d 170, 181 (5th Cir. 1989). The summary-judgment evidence clearly substantiates Thompson's authority to deliver and explain the loan documents to Kelly. But the relevant question is whether Thompson's actual authority to deliver documents and facilitate the loan included the authority to negotiate terms and commit the lender. There is no summary-judgment evidence that Thompson had actual authority to negotiate, and thus the question is whether he had apparent or implied authority to do this.

■ Apparent authority, we have said, is based on estoppel, arising "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Baptist Mem. Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 948 (Tex.1998). We have further noted that the principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Rourke v. Garza,* 530 S.W.2d 794, 803 (Tex.1975) (citing *Hallmark v. United Fid. Life Ins. Co.,* 155 Tex. 291, 286 S.W.2d 133 (1956)). Moreover, when making that determination, only the conduct of the principal is relevant. *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 953 (Tex. 1996) (per curiam). Finally, the standard

---

1. The court of appeals also affirmed the summary judgment for Thompson that Kelly has not appealed. 181 S.W.3d at 413–15.

is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422, 427 (1953). Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority.

Kelly submits that he reasonably believed that Thompson possessed apparent authority in this case similar to that of the agent in *Walker Insurance Services v. Bottle Rock Power Corp.,* 108 S.W.3d 538 (Tex.App.-Houston [14th Dist.] 2003, no pet.), a special-appearance appeal that turned on the apparent-authority issue. Walker sued Bottle Rock, a California power company, for an incentive fee that was to be paid if a decommissioning and reclamation bond was acquired under specific time constraints. *Id.* at 545. At issue was whether the alleged agent, Arlie Beane, had apparent authority to negotiate or contract with Walker on behalf of the power company. *Id.* at 549. The court of appeals concluded that he did have the authority, noting that most of the negotiations were conducted through Beane, that he was actively involved in securing the bond, and that his efforts were "accepted and ratified" by Bottle Rock. *Id.* at 551–52. Moreover, Wilson testified that "one of Bottle Rock's directors confirmed his understanding of Beane's authority to act and negotiate on its behalf." *Id.* at 551.

On this evidence, the court of appeals concluded that Beane was no mere middleman but rather Bottle Rock's "point man" for obtaining the bond on its behalf. *Id.* Kelly likewise suggests that Thompson was no mere middleman in his dealings with Gaines, but the evidence is otherwise.

Initially signing as Kelly's mortgage broker, Thompson located Southwest Guaranty as a possible lender, brought the parties together, and facilitated the paperwork for the loan. There is no summary-judgment evidence, however, that Thompson had any role in the negotiations. Instead, the evidence indicates that Thompson acted merely as a middleman after negotiations had been completed. *See, e.g., Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.,* 923 S.W.2d 112, 116 (Tex.App.-Houston [ 14th Dist.] 1996, no writ) (where a broker acts as a "matchmaker" that brings parties together for the purpose of negotiating, he is not an agent of either party); *Chien v. Chen,* 759 S.W.2d 484, 495 n. 7 (Tex.App.-Austin 1988, no writ) (where a broker deals with both parties at arm's length, he is a "middleman" and not an agent of either party).

■ In further contrast to *Walker Insurance Services,* the summary-judgment evidence in this case consists almost entirely of acts or statements attributed to the alleged agent, Thompson, rather than to the putative principal, Gaines. *See* 181 S.W.3d at 408–09.[2] Declarations of the

---

**2.** The court of appeals quoted as relevant the following from Kelly's affidavit:

- Thompson "represented to me that he was working for Russell Gaines. Further, the loan application and associated paperwork for the loan was submitted by Mr. Thompson on Southwest Guaranty Mortgage Corporation letterhead";
- "Thompson called me and advised me that Russell Gaines required a $3,000.00 'good faith' deposit";

- Thompson advised Bullard that the initial paperwork would need to be changed to reflect that the nature of the transaction was a refinance rather than a purchase;
- Thompson advised Bullard that Gaines and Southwest Guaranty needed an appraisal done on the property; and
- Thompson advised Kelly that Gaines would have to approve the appraiser chosen.
  181 S.W.3d at 408–09.
  And the following from the affidavit of Bullard, who was one of Kelly's attorneys:

alleged agent, without more, are incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority. *Sw. Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 428 (Tex.1977). Instead, "apparent authority must be based on the acts of the principal" and "is limited to the scope of responsibility that is apparently authorized." *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex.2004).

Limiting our review to the acts of the principal, we note the following relevant summary-judgment evidence. First, Gaines testified that he gave loan documents to Thompson for delivery to Kelly because Thompson said that he "would be the best bird dog to get it done." Gaines also testified that Thompson solicited the loan on behalf of Southwest Guaranty. There were also blank loan forms on Southwest Guaranty letterhead in Thompson's office. Finally, Gaines did not deny that Thompson was Southwest Guaranty's agent when Kelly's attorney told him that he had returned the documents to "your agent, Robert Thompson."

Gaines' testimony clearly indicates that Gaines used Thompson as an intermediary to deliver loan documents and facilitate the transaction. But evidence that Thompson

- he "personally relayed to Mr. Thompson all facts surrounding Mr. Kelly's interest in [the] property";
- "Thompson forwarded to [him], for completion by Mr. Kelly, loan paperwork and associated documents under the letterhead of S.G.M., which stood for Southwest Guaranty Mortgage Corporation";
- he assisted Kelly in completing the paperwork "and returned all documents to Robert Thompson for forwarding on to Russell Gaines and Southwest Guaranty";
- "at all times during the loan application process, Robert Thompson represented to me that he was working for Russell Gaines, and all of the application paperwork was submitted on Southwest Guaranty Mortgage Corporation letterhead";

brought the parties together, delivered the paperwork, and assisted in its completion is not evidence that Gaines authorized or acquiesced in Thompson's representation that the loan was "a done deal." Nor is the existence of blank Southwest Guaranty loan forms in Thompson's office evidence that Thompson had authority to commit funds. The summary-judgment record does not explain the purpose of these forms or demonstrate that Gaines was aware of them; even if we assume Thompson was authorized to fill in the loan forms, that is no evidence he was authorized to sign them on Southwest Guaranty's behalf (thus rendering them "a done deal"). Finally, Gaines' failure to affirmatively deny any agency relationship when Kelly's attorney told him that he had returned the documents to "your agent, Robert Thompson" is consistent with Thompson's authority to receive the documents on Gaines' behalf, but it is not conduct by which a person might reasonably infer that Thompson also possessed the authority to negotiate the terms of those documents. *See Chastain*, 257 S.W.2d at 427 (applying reasonably prudent person standard).

The relevant issue then is not merely the existence of an agency relationship, but rather the scope of that agency. Kelly does not complain that Thompson lost the

- Thompson advised him that the initial paperwork would need to be changed to reflect that the nature of the transaction was a refinance rather than a purchase;
- Thompson advised him that Gaines and Southwest Guaranty needed an appraisal done on the property;
- Gaines advised him that he did not have all the necessary paperwork, to which Bullard replied that he had forwarded the paperwork to Gaines's agent Thompson;
- Gaines did not deny that Thompson was his agent; and
- Bullard is "personally familiar with the fact that all loan paperwork was sent directly to Russell Gaines."

*Id.* at 409.

papers or failed to deliver them in a timely manner, matters that were clearly entrusted to him. Rather, Kelly complains that Thompson, acting for Gaines, fraudulently misled him into believing that the loan was "a done deal." Thus, the relevant issue is whether Thompson's agency included the authority to alter the express requirements of the commitment letter and commit Gaines and Southwest Guaranty to the loan.

■ Because an agent's authority is presumed to be co-extensive with the business entrusted to his care, it includes only those contracts and acts incidental to the management of the particular business with which he is entrusted.[3] The summary-judgment evidence here fails to raise a fact issue about whether Thompson's agency included the apparent authority to commit the funds or obligate Gaines to terms other than those agreed to in the parties' contract, and thus Thompson's alleged assurance that the loan would close cannot be imputed to Gaines or Southwest Guaranty. Accordingly, the court of appeals erred in reversing the trial court's summary judgment and in remanding the fraud claim for trial.

\* \* \*

We reverse the court of appeals' judgment and render judgment that Kelly take nothing.

---

3. *See First Valley Bank of Los Fresnos*, 144 S.W.3d at 471 ("apparent authority is limited to the scope of responsibility that is apparently authorized"); *Texas Midland R.R. v. Monroe*, 110 Tex. 97, 216 S.W. 388, 388 (Tex. 1919) (noting general rule that principal will not be charged with liability to a third person for the acts of the agent outside the scope of his delegated authority); *see also Wheaton Van Lines v. Mason*, 925 S.W.2d 722, 732 (Tex.App.-Fort Worth 1996, writ denied); *Hartford Cas. Ins. Co. v. Walker County Agency, Inc.*, 808 S.W.2d 681, 687 (Tex.App.-Corpus Christi 1991, no writ); *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 837 (Tex.App.-Amarillo 1993, writ denied); *Longoria v. Atlantic Gulf Enterprises, Inc.*, 572 S.W.2d 71, 78 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.).