

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00458-CV
_____

BANNUM, INC. AND CHRISTOPHER TOVAR D/B/A
TOVAR CONSTRUCTION COMPANY, APPELLANTS

V.

EUGENE MEES D/B/A ENCORE HOUSE, APPELLEE

On Appeal from the 419th District Court
Travis County, Texas
Trial Court No. D-1-GN-07-002493, Honorable Lora J. Livingston, Presiding

June 24, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This case is all about betting on the come and the pitfalls inherent in doing that. Bannum, Inc. contracted with Eugene Mees to buy the latter's building. The contract was contingent upon Bannum 1) winning a bid with the Bureau of Prisons (BOP) to provide a half-way house for convicted individuals and 2) beginning the performance of

those services; that is, if either contingency failed to occur "for any reason, then [the] contract [was rendered] null and void" by its very terms.

Mees' building was intended to be used for that purpose if the BOP accepted Bannum's bid. Because the facility needed renovations, though, Bannum retained Tovar Construction Company, and others, to make them. Construction of those improvements (and the incurrence of debt related thereto) began before the BOP accepted Bannum's bid. And, though it was originally accepted, the BOP ultimately terminated the agreement for various reasons. From that event arose this dispute. Tovar wanted to get paid, even though the city "red tagged" or stopped him from working due to the lack of a permit. Then Bannum and Mees sued each other for breach of contract and other causes of action. Some were disposed of via summary judgment. Others were tried. And, both Mees and Bannum felt aggrieved in some way by what occurred while litigating below.

The issues before us are several. We address each in turn on our way to reversing a summary judgment, in part, and affirming the remainder of the trial court's judgment.

*Bannum's Issues*

a. *Breach of Contract*

Bannum's first issue (with its three subparts) concerns the trial court's decision to grant Mees' summary judgment upon Bannum's breach of contract claim. Purportedly, it erred. We overrule the issue and subparts.

Bannum informs us that the BOP's decision to cancel or terminate its contract with Bannum rendered the contract between Bannun and Mees "null and void."[1] Indeed, the contract provision itself states that "[i]n the event Bannum is not awarded a Government contract for Community Sanction Center services to be located at this property (or) Bannum cannot begin performance of a contract, if awarded, for any reason, then this contract is *null and void*." (Emphasis added). And, therein lies the resolution to the issue before us.

Before one can sue another for breach of contract, there must first be a contract susceptible to breach. An agreement rendered "null and void" is not such a contract because a void contract never came into existence. *See Elijah Ragira/Vip Lodging Group, Inc. v. Vip Lodging Group, Inc.*, 301 S.W.3d 747, 754 (Tex. App.—El Paso 2009, pet. denied) (stating that "to be entitled to specific enforcement of a contract, a party must show that the contract in question is valid and enforceable" and "[b]ecause we find that Ragira's failure to pay the review-period fees rendered the contracts null and void, no contracts existed, and therefore, Ragira was not entitled to specific performance"). In legal parlance, something that is void is something that never occurred. *See Oles v. Curl*, 65 S.W.3d 129, 133 n.2 (Tex. App.—Amarillo 2001, no pet.). Furthermore, no one disputes that Bannum could not begin performance of its agreement with the BOP because the latter terminated it.

So, as both Bannum and Mees argued below and here when beneficial to them, the contract was "null and void." And, there never arose an agreement susceptible to

---

[1] Examples of that appear in various passages within Bannum's brief when arguing that "Bannum and Tovar were in the process of obtaining building permits in order to complete the repairs . . . at the time the BOP terminated Bannum's contract for default, *which rendered the contract null and void*," "[b]ecause the contract *was rendered null and void*, Bannum could no longer enter the property and finish the improvements and renovations," and an "additional $40,794.57 had not been invoiced at the time the contract *was rendered null and void*." (Emphasis added).

3

breach. Simply put, one cannot legally enforce rights under an agreement that never was.

b. *Negligent Misrepresentation or Concealment and Deceptive Trade Practice Claims*

Next, Bannum contends that the trial court erred in granting summary judgment against his claims for negligent misrepresentation or concealment and deceptive trade practice. We agree.

According to Bannum's live pleading, Mees represented that the facility being acquired was zoned to house an "unlimited" number of transitional or half-way house residents when in fact it was not. Because of that misrepresentation, the BOP ultimately cancelled its contract with Bannum. Mees sought to defeat the claims by moving for summary judgment. Therein, he simply argued that "if [he] did not cause Bannum damages, [he was] entitled to Summary Judgment as a matter of law." He then alleged that he did not not cause such damages because 1) Bannum failed to purchase the facility on the closing date of June 4, 2006, 2) "the Contract and Addendum I did not have any terms which extended any provision of the Contract past its termination," 3) in failing to purchase the property by June 4th, Bannum "completely lost its ability to fulfill its contract with the BOP," 4) "[a]t that point . . . it did not matter whether Mees had misrepresented the zoning" since Bannum "could not fulfill the BOP contract because it could not purchase the property," 5) "[h]ad Bannum followed through with the purchase prior to June 4, 2006, it might have suffered damages that could be attributed to Mees," and 6) Bannum "did not make the purchase which was the sole cause of its damages." Thereafter, the motion for summary judgment was granted.

4

Yet, upon review of the record before us, we discover some evidence of record indicating that through renegotiation or otherwise, Bannum retained a contractual right to buy the property after June 4, 2006. Indeed, Mees acknowledged as much in its motion for summary judgment when asserting that 1) after failing "to close on the original contract . . . [Bannum] had to re-negotiate with Mees to re-obtain the right to purchase" and 2) in "December, 2006, Bannum and Mees signed a document called a second addendum to the Contract" which addendum "was to 're-state' the original Contract and Addendum I and completion of the sale of the property."

Consequently, we have evidence of record creating a material issue of fact upon the very ground (*i.e.* causation) proffered by Mees as warranting summary judgment. And, if there is some evidence illustrating that Bannum had a right to buy the facility after June 4, 2006, then Mees failed to prove, as a matter of law, that 1) the right to buy was lost on June 4th of that year and 2) it was the loss of that right on June 4th that solely caused Bannum's damages. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC,* 2014 WL 1875722, 2014 Tex. App. LEXIS 380 (Tex. May 9, 2013) (stating that the burden to prove entitlement to a traditional summary judgment is that of the movant); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (stating that the movant has the burden to prove its entitlement to summary judgment as a matter of law); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005) (stating that when the record contains evidence creating a material issue of fact, the movant failed to sustain its burden to prove entitlement to summary judgment as a matter of law).

As for Mees' attempt to raise grounds unmentioned within his motion as a way to support the trial court's summary judgment decision, we must hold the effort as

ineffectual. A summary judgment may be affirmed only upon the grounds uttered by the movant in its motion. *Shih v. Tamisiea*, 306 S.W.3d 939, 946 (Tex. App.—Dallas 2010, no pet.). So, our review is restricted to the latter, and we find them deficient. Of course, Mees is free to proffer those and any other grounds it may care to via another summary judgment motion after remand.

        c. *Failure to Allow Trial Amendment*

Next, Bannum asserts that the trial court erred in denying it leave to file a trial amendment. Via the amendment, it sought to pursue a claim for breach of contract. The purported breach involved Mees failure to return $10,000 in earnest money per the terms of the void contract. We overrule the issue.

The decision to permit or deny a trial amendment lies within the trial court's discretion. *Robbins v. Payne*, 55 S.W.3d 740, 745 (Tex. App.—Amarillo 2001, pet. denied). As we previously noted, one cannot base a claim for breached contract upon a contract that never existed. So, to the extent that the proposed trial amendment involved a breach of contract claim arising under the void and, therefore, non-existent sales contract at bar, the trial court did not abuse its discretion in denying Bannum's request.[2]

        d. *Directed Verdict of Mechanics/Materialman's and Constitutional Liens*

Next, Bannum argues that the trial court erred in directing verdicts upon its effort to enforce a mechanics/materialman's and constitutional liens. We again overrule the issue.

---

[2] While extra-contractual causes of action may have been available through which pursuit of the $10,000 earnest money payment was possible, they were not mentioned in Bannum's request for a trial amendment.

1. *Statutory Lien*

The purported mechanics/materialman's lien belonged to Tovar Construction, the company that worked on the facility after Bannum and Mees entered into the contract to convey the property but before the sale actually closed. The company was retained by Bannum to perform the improvements. In settling its dispute about payment with Bannam, Tovar assigned the purported lien to Bannum, which lien Bannum sought to enforce against Mees. Though the claim underwent trial, the jury did not dispose of it. Rather, the trial court ended the matter by granting Mees' request for a directed verdict. Bannum contends that the trial court erred in doing so since evidence purportedly existed illustrating that it contracted for the services as agent of Mees. We overrule the issue.

A mechanic's lien attaches only to the interest of the person contracting for construction. *Diversified Mortg. Investors v. Blaylock General Contr., Inc.*, 576 S.W.2d 794, 805 (Tex. 1978); *Roberts v. Driskill Holdings, Inc.*, No. 03-99-000532-CV, 2000 WL 301195, 2000 Tex. App. LEXIS 1832, at *6 (Tex. App.—Austin March 23, 2000, no pet). Because the evidence of record illustrates that Tovar contracted with Bannum, not Mees, Bannum attempts to satisfy the *Diversified* rule by arguing that it was Mees' agent. This argument has many faults, though.

First, an agent acts solely for the benefit of the principal in all matters connected with the agency. *Nat'l Plan Adm'rs., Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007). Here, the supposed agency involved the improvement of property that Bannum intended to buy from Mees. Bannum, not Mees, intended to buy the property so that it, not Mees, could enter into an economic arrangement with the BOP. We have

7

been cited to no evidence of record in any way suggesting that Mees was a party to the economic arrangement with the BOP. Nor did we find any. Rather, Bannum was pursuing its own interests when contracting with Tovar, and that hardly evinces the existence of an agency relationship.

Second, given that an agent purports to act for his principal, it logically follows that there must be some evidence suggesting that the principal agreed to be bound by the contract executed on its behalf by the supposed agent. To the extent that the contract at issue here involves constructing improvements upon property Bannun sought to buy, there should be some evidence that Mees agreed to pay or otherwise be obligated for those improvements if an agency relationship existed. Yet, we are cited to and found no evidence in anyway indicating that before, during, or after Tovar began improving the property Mees agreed with Bannun to ultimately be obligated for the improvements to the property.

Third, and most importantly, agency arises from an expressed or implied agreement between the supposed agent and principal whereby the former agrees to be subject to the directives and authority of the latter. *Reliant Energy Services, Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782-83 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Again, we are cited to and found no evidence illustrating the presence of such an agreement between Bannum and Mees when it came to improving the facility Bannum sought to buy. And, that Mees made the facility available to Tovar so that the work could be done does not fill the void. That simply showed that Mees sought to help Bannum pursue Bannum's interests *viz* the acquisition of the building and the performance of the BOP contract.

The argument that, from the viewpoint of Tovar, Bannum had apparent authority to act for Mees fairs no better. Apparent authority "is based on estoppel, arising 'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" *Gaines v. Kelly*, 235 S.W.3d 179, 182-83 (Tex. 2007). Furthermore, it is the acts of the principal that control, not those of the agent. *Id.* And, since those acts must be of the ilk to dupe the complainant into believing that the supposed agent is actually acting for the principal, it would seem logical to see if Tovar even thought he was actually contracting with Mees.

According to the record before us, Tovar testified that 1) "Bannum hired me to perform some work," 2) "I knew Bannum was going to purchase the building and was renovating it," 3) Bannum was "going to purchase it from Mees," 4) Tovar showed Mees the floor plan of what was being done because Mees was "curious," 5) Tovar presented the invoices to Bannum for payment, 6) Bannum sent him checks in payment of the invoices (which checks were drawn on Bannum's account), 7) Tovar submitted the renovation proposal to Bannum, 8) after the work stopped, Mees contacted Tovar about the cost of finishing the work, 9) Tovar eventually sued Mees who was "someone [he] didn't have a deal with," 10) he "did have a deal with Bannum" who "didn't pay" him, 11) Tovar answered "[n]o, I did not" when asked "[a]nd you never once had a deal with Mr. Mees?," 12) when asked " . . . you certainly never told Mr. Mees, I'm coming in and I'm going to charge you," Tovar answered "No," 13) when asked " . . . you expected, and that's an important word in this case, that Bannum would pay you, right," he answered

9

"Correct," 14) when asked " . . . you never heard from Bannum that they expected that Mr. Mees would pay you," Tovar answered "No," 15) when asked " . . . you never heard from Mr. Mees that he expected that you were doing this work and would be charged to him," Tovar answered "No," 16) when asked " . . . you only had a deal with Bannum and you only sent these invoices that we saw to Bannum, right," Tovar answered "Yes, ma'am," and 17) when asked whether Mees' granting Tovar access to the property to perform the work could be construed as indicating that Mees expected to pay him, he said "no." These very words of Tovar illustrate an utter absence of a belief, reasonable or otherwise, on the part of Tovar that Mees was the party with whom he contracted to provide the services. And, without such a belief, one can hardly argue that the conduct of Mees led Tovar to believe that Bannum was acting for or was otherwise binding Mees.

Nor did we find evidence of acts on the part of Mees which could reasonably suggest that Bannum had the authority to bind Mees or was acting on Mees' behalf. Bannum simply refers us to evidence of Mees facilitating Tovar's entry into the areas being renovated as the requisite proof. Yet, again, Tovar himself testified that such could not be construed as indicating Mees was liable for payment, and we agree.

The trial court did not err in granting a directed verdict on the matter of a statutory lien. No evidence of record existed from which a fact finder could reasonably infer that Tovar contracted with Mees, and without that evidence the limitation imposed by *Diversified Mortgage* went unsatisfied. *See Gomer v. Davis*, 419 S.W.3d 470, 475 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing the standard applicable when reviewing a directed verdict).

10

## 2. *Constitutional Lien*

Next, Bannum contends that it "furnished thousands of dollars in improvements and renovations upon Mees' property pursuant to its agreements with Mees . . . who clearly authorized Bannum to enter the facility to make improvements and renovations." Therefore, it should be "allowed to enforce its constitutional lien for payment." We overrule the issue.

Article 16, section 37 of the Texas Constitution provides that: "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." TEX. CONST. art. 16, § 37. Bannum considered himself a "materialman" since he contracted with Tovar and others to perform the renovation services and paid them for providing the services and materials needed to undertake the renovations. And, therein lies the problem. A materialman is someone "'who does not follow the business of building or contracting to build homes for others, but who manufactures, purchases[,] or keeps for sale materials which enter into buildings and who sells or furnishes such material without performing any work or labor installing or putting them in place.'" *Huddleston v. Nislar*, 72 S.W.2d 959, 962 (Tex. Civ. App.—Amarillo 1934, writ ref'd); *accord Reddix v. Eaton Corp.*, 662 S.W.2d 720, 724 (Tex. App.—San Antonio 1983 writ ref'd n.r.e.) (stating the same). Bannum neither manufactured, bought, kept for sale, sold or furnished materials. Instead, it hired or engaged independent contractors to renovate the property, and they acquired the

materials from third parties. And, once installed, Bannum paid, in part, those contractors for the work and materials they provided.

As said by Mees, "[h]iring contractors is not the same as purchasing and selling materials to be used on job sites." It is the ownership of the material at the time it is incorporated into the building that makes one a materialman, and the debt created by such appropriation is that which the Constitution intended to secure by the constitutional lien. *First Nat'l Bank v. Lyon-Gray Lumber Co.*, 194 S.W. 1146, 1150 (Tex. Civ. App.—Texarkana), *aff'd*, 110 Tex. 162, 217 S.W. 133 (Tex. 1919). We are cited to and find no evidence that Bannum owned the materials at the time they were incorporated into the facility.

*e. Factual Insufficiency*

Bannum finally contends that factually insufficient evidence supports the jury's decision to deny its claims sounding in quantum meruit and unjust enrichment. We overrule the issue.

Regarding quantum meruit, the jury was asked:

One party [Tovar] performs compensable work if (a) valuable services are rendered or materials furnished, (b) for the person sought to be charged [Mees], (c) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (d) under such circumstances as reasonably notified the person sought to be charged that the party in performing such services was expecting to be paid by the person sought to be charged.

It answered "No." As previously mentioned, there is ample evidence that Tovar did not perform compensable work while expecting payment from Mees. Rather, he expected payment from Bannum. Given the applicable standard of review, *see Smith v. East*, 411 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. denied) (stating that a finding lacks

the support of factually sufficient evidence when the overwhelming weight of the entire evidence shows it to be manifestly wrong or unjust), we cannot say that the finding was manifestly wrong or unjust when weighed against all the evidence of record.

Next, and assuming *arguendo* that the trial court properly submitted to the jury an issue on unjust enrichment, *see City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ) (indicating that unjust enrichment is not a stand-alone cause of action), we again conclude that the jury's answer was neither manifestly wrong or unjust.

The jury was told that a "person is unjustly enriched when he has obtained a benefit from another by fraud, duress, or the taking of an undue advantage against the fundamental principles of justice or equity and good conscience, or has passively received a benefit that would be unconscionable to retain." The record contains evidence that renovations were made to the property. Other evidence indicates that those renovations were far from complete when Tovar stopped working, that the property was unfit for use by Mees, that the sidewalk was torn up, that walls had been removed, that flooring was removed, that all plumbing and toilets had been removed from bathrooms, that there was a large hole left in the concrete "in the back wing," that the facility "was pretty well a mess," that it was not habitable, and that Mees expended from $80,000 to $100,000 to repair it. So, the jury had before it ample evidence upon which to conclude that Mees did not receive a benefit that would be unconscionable to retain when Tovar ceased his work.

13

*Mees' Cross–Issue—Attorney's Fees*

Mees argues that the trial court erred in denying him attorney's fees. He purportedly was entitled to same per paragraph 16 of the sales contract he executed with Bannum. The contract in question is the same instrument that everyone contended, at some time or another, was "null and void." Given our resolution of Bannum's first issue, the determination that the instrument was rendered "null and void" by its own terms, and the inability to enforce a contract or part thereof that never existed due to the legal fiction of being void, we overrule the issue.

Accordingly, we reverse that portion of the summary judgment denying Bannum recovery upon its claims of negligent misrepresentation and deceptive trade practice and remand that aspect of the cause to the trial court. In all other things, the judgment of the trial court is affirmed.

Brian Quinn
Chief Justice