**Reversed and Rendered in Part and Affirmed in Part and Memorandum Opinion filed February 1, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00124-CV

---

## TCB ELITE FLEET, LLC; CHAD GATLIN; AND TABITHA GATLIN, Appellants

## V.

## JAY ICET, Appellee

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Cause No. 18-DCV-0702**

---

## MEMORANDUM OPINION

Appellants TCB Elite Fleet, LLC (TCB), Chad Gatlin, and Tabitha Gatlin appeal from an adverse judgment on appellee Jay Icet's breach of contract claim. In their first issue appellants challenge the sufficiency of the evidence to support the

trial court's finding of joint and several liability.[1] In their second issue appellants challenge the sufficiency of the evidence to support the trial court's damage award.

We conclude the record contains legally and factually sufficient evidence to support the trial court's finding of TCB and Chad Gatlin's joint and several liability. Because we conclude there is legally insufficient evidence that Tabitha Gatlin entered into an agreement with Icet, we sustain that portion of appellants' first issue and reverse that portion of the judgment finding Tabitha Gatlin jointly and severally liable. We further conclude the evidence is legally sufficient to support the damage award. Accordingly, we reverse that portion of the judgment that awards joint and several liability against Tabitha Gatlin and render judgment that Tabitha Gatlin is not jointly and severally liable. We affirm the remainder of the trial court's judgment as challenged on appeal.

## BACKGROUND

Appellee Jay Icet testified that he and appellant Chad Gatlin entered into an oral agreement to start a construction business. The agreement was to "split the company 50/50," which Icet explained meant they would share in the profits and losses of the company equally. Chad represented to Icet that he owned a trucking company called TCB Elite Fleet, LLC and they would use that entity to start their construction business. Icet understood that he was acquiring a fifty percent interest in TCB. Icet understood that Tabitha Gatlin would keep the company's books but that she would not be an owner. Icet testified that he never discussed anything with Tabitha "in the initial setup." Subsequently, the Gatlins had business cards for TCB printed and listed Icet as an owner. The first construction work done by TCB began

---

[1] Although appellants filed a joint brief, their first issue is only asserted by TCB and Tabitha Gatlin.

2

in 2016.

After working with Chad in the construction business for a couple of years Icet suspected that he was not being paid fifty percent of the profits. When the business began Icet thought that a portion of his share of the profits was being retained for the benefit of the company and even agreed to such a retention. Eventually, Icet realized that was not the case and requested an accounting from Chad. Chad refused the accounting. Subsequently Icet sent a formal demand for an accounting through his attorneys. At that time Icet ceased working for TCB.

After Chad refused Icet's request for an accounting, Icet hired an accounting firm to produce an accounting of TCB and address what he was owed. A forensic analysis was conducted by Autumn Kraus of Whitley Penn accounting firm. Kraus's report was admitted into evidence without objection. Icet learned that a number of TCB's purported expenditures were actually personal expenditures of the Gatlins. Kraus concluded that Icet's damages were $328,114. Icet described that damage amount as "conservative" because there were a few construction jobs of which he had personal knowledge that were not turned over to Kraus by the Gatlins.

At the conclusion of testimony, the trial court stated on the record that there was a "meeting of the minds" between Icet and Chad to form a partnership and split profits evenly. The final judgment stated that Icet was entitled to recovery against "Defendants for breach of contract." The term "Defendants" included all three appellants. The judgment awarded damages of $193,000 to be recovered jointly and severally from the "Defendants." The trial court timely filed findings of fact and conclusions of law. Appellants TCB, Chad Gatlin, and Tabitha Gatlin filed this appeal.

ANALYSIS

In two issues appellants assert the trial court erred in (1) rendering judgment jointly and severally against all three appellants; and (2) awarding damages of $193,000. In both issues appellants challenge the legal and factual sufficiency of the evidence to support certain of the trial court's findings of fact.

## I.     Standard of review and applicable law

We review the trial court's decision for legal sufficiency of the evidence using the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a party challenges the legal sufficiency of the evidence on a finding on which it did not bear the burden of proof, the party must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011).

We apply these standards mindful that the factfinder is the sole judge of the

credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the factfinder's findings. *See City of Keller*, 168 S.W.3d at 819, 822. When, as here, there is a complete reporter's record of the trial, the trial court's findings of fact will not be disturbed on appeal if there is any evidence of probative force to support them. *See Tendeka, Inc. v. Nine Energy Serv. LLC*, No. 14-18-00018-CV, 2019 WL 6872942, at \*5 (Tex. App.— Houston [14th Dist.] Dec. 17, 2019, no pet.) (mem. op.); *Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

For a factual-sufficiency review, we examine the entire record and consider evidence favorable and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*.

## II. The evidence is legally and factually sufficient to support joint and several liability against Chad and TCB, but not Tabitha.

In TCB and Tabitha's first issue they assert the evidence is legally and factually insufficient to support the trial court's finding of joint and several liability for breach of contract. TCB and Tabitha concede that Chad Gatlin and Icet entered into an oral agreement, but assert there is no evidence that TCB or Tabitha Gatlin entered into a contract with Icet.

To recover on a breach of contract claim, a claimant must prove: (1) the existence of a valid contract; (2) the claimant performed or tendered performance; (3) the other party breached the contract; and (4) the claimant was damaged as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). Defendants are jointly and severally liable for breaches of contracts to which they are a party. *Z.M. Shayjayadam3, LLC v. Omnova Sols., Inc.*, No. 14-19-

00623-CV, 2020 WL 6278615, at \*10 (Tex. App.—Houston [14th Dist.] Oct. 27, 2020, no pet.) (mem. op.). Joint and several liability is appropriate in contract cases when two or more persons promise the same performance. *Id.*; *Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 99 (Tex. App.—Eastland 2006, pet. denied). When an obligation is joint and several, any one of the obligors may be held liable. *Z.M. Shayjayadam3*, 2020 WL 6278615, at \*10.

The trial court filed findings of fact, in which it determined:

1.      In or around 2015, Plaintiff and Defendants entered into an oral contract to start a construction company using the name TCB Elite Fleet, LLC ("TCB"), which was an existing Texas limited liability company (the "Business").

2.      Plaintiff and Defendants agreed that [sic] to be equal partners in the Business and split the profits of the business 50/50.

*****

7.      A preponderance of the evidence shows that Defendants breached the agreement with Plaintiff and failed to pay Plaintiff 50% of the profits of the Business.

Appellants challenge the sufficiency of the evidence to support the above findings asserting that the evidence is insufficient to show that all three defendants entered into an agreement.

For an agreement to be enforceable, there must be a meeting of the minds with respect to its subject matter and essential terms. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did—and not on their subjective state of mind. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In determining mutual assent, the court considers the communications between the parties and the acts and circumstances

6

surrounding those communications. *Lopez*, 93 S.W.3d at 556.

In this case, it is undisputed that an oral contract was formed between Chad and Icet. The record does not reflect a meeting of the minds between Tabitha Gatlin and Icet. Specifically, Icet testified that his agreement was only with Chad. On cross-examination Icet was asked about his "agreement with the Gatlins[.]" Icet responded, "When you say 'Gatlins,' would you be more specific? I only had an agreement with one Gatlin." Icet testified that he had an agreement to create a company with Mr. Gatlin, and never discussed anything with Ms. Gatlin during the initial setup. The record contains no evidence of a meeting of the minds between Tabitha Gatlin and Icet.

The evidence supports the trial court's findings that Chad and Icet formed a binding agreement. We turn now to Icet's assertions that TCB and Tabitha can be held jointly and severally liable with Chad.

## A.  Chad's purported authority to represent TCB

Icet asserts that Chad had apparent authority to bind TCB to an oral agreement.

Apparent authority is based on estoppel and arises either (1) from a principal knowingly permitting an agent to hold himself or herself out as having authority, or (2) by a principal's actions that lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he or she purports to exercise. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). The principal's full knowledge of all material facts is essential to establish a claim of apparent authority. *Id*. Only the conduct of the principal is relevant. *Id*. The standard is that of a reasonably prudent person using diligence and discretion to ascertain the agent's authority. *Id*. at 182–83. "Thus, to determine an

7

agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Id.* at 183; *Amerigroup Tex., Inc. v. True View Surgery Ctr., L.P.*, 490 S.W.3d 562, 566 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The trial court found that "Chad Gatlin and Tabitha Gatlin represented to Plaintiff, and others in the community, that Plaintiff was an owner of TCB Elite Fleet, LLC." We conclude the evidence is not legally or factually insufficient to support this finding.

Icet testified that he and Chad entered into an agreement to create a construction company using TCB, a company Chad represented he owned. Chad represented to Icet that he and his father operated a trucking company under the name TCB Elite Fleet, LLC. When Icet asked Chad what portion of the company Chad's father owned, Chad responded that he owned the company. At that time Icet did not know that Tabitha had any ownership in TCB. Icet later learned that at the time he and Chad agreed to start a business, Chad had zero ownership in TCB. Tabitha and her mother owned TCB until May 2017 when Tabitha's mother gave her portion of TCB to Chad. In 2016, when Icet and Chad agreed to start the construction company, Chad owned no interest in TCB.

The record further supports the trial court's finding that Tabitha represented to others in the community that Icet was an owner of TCB but did not inform Icet that Chad lacked authority to bind TCB. Tabitha permitted Chad to represent to Icet that he owned TCB. Tabitha had business cards printed with both Icet and Chad's names listed as owners of TCB.

Viewing the above evidence in the light most favorable to the trial court's findings, the record reflects that Chad held himself out as an owner and agent of TCB at the time he and Icet entered into a contract. The evidence further supports

8

that Tabitha willingly participated in allowing Icet to believe that Chad was an owner of TCB. Icet could have formed a reasonable belief that Chad had authority to represent TCB as a party to the contract. Accordingly, when viewed cumulatively and in the light most favorable to Icet, the evidence at trial is legally sufficient to support the trial court's implied finding that Chad had apparent authority to enter into a contract on behalf of TCB. Viewing all of the evidence, both that in favor of the trial court's finding and that against the finding, if any, we conclude the trial court's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

## B. Tabitha's purported ratification of the contract

Icet asserts for the first time on appeal that while his agreement was with Chad and TCB, Tabitha ratified the agreement. The record reflects, however, that Icet failed to plead ratification or obtain a finding of fact that Tabitha ratified the contract.

Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind that person and which that person had the right to repudiate. *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021). Generally, ratification is a plea in avoidance, which, absent trial by consent, must be affirmatively pleaded or it is waived. *Land Title Co. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). Whether a person has ratified an act is essentially a question of fact, to be determined from all the circumstances in evidence. *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 102 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In Icet's live pleading he alleged that he and Chad started a construction company, agreed to use the entity TCB, and to split profits and losses equally. Icet alleged that, "[w]hile no written contract memorializing this agreement was executed, Icet, [TCB], Tabitha Gatlin, and Chad Gatlin operated under these terms

9

until 2018." Icet alleged a breach of contract claim against TCB, Chad, and Tabitha, in which he alleged that his agreement to split net profits was with both Chad and Tabitha. Icet's live pleading did not contain an allegation that Tabitha ratified Chad and Icet's agreement.

Not only did Icet fail to plead ratification, but he failed to obtain a finding of fact on the issue. While omitted findings can be presumed if an element of the ground of recovery was included in the findings of fact, Tex. R. Civ. P. 299, and if the omitted finding is supported by the evidence, here the trial court made no findings on any elements of ratification. Even if the theory of ratification had been raised by the pleadings and evidence, since the trial court made findings of fact, but no finding on ratification, on appeal, the ratification theory has been waived. *MCG Drilling Investments, LLC v. Double M Ranch, Ltd.*, No. 11-14-00299-CV, 2018 WL 2022590, at *5 (Tex. App.—Eastland Apr. 30, 2018, no pet.); *see also Pinnacle Homes Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex. App.— Houston [14th Dist.] 1982, writ ref'd n.r.e.).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude the evidence does not support ratification of an oral agreement between Icet and Tabitha. In that regard, Tabitha, not having agreed to promise performance, cannot be held jointly and severally liable. *See Z.M. Shayjayadam3*, 2020 WL 6278615, at *10. We sustain that portion of appellants' first issue that challenges the sufficiency of the evidence to support joint and several liability for Tabitha. We overrule the remainder of appellants' first issue.

## III.    The accounting expert's testimony was not conclusory.

In appellants' second issue they assert the trial court erred in awarding damages of $193,000 because the evidence is legally and factually insufficient to

support the award.[2] Specifically, appellants assert Icet's accounting and damages expert, Autumn Kraus, "conjured an opinion" based on expenses that "may have been expended for personal use," job breakdown sheets that made it "impossible to match to earnings in a given year, or to determine if all sheets have been provided," and "lack of complete foundational data." Appellants further contend that Kraus made a "self-serving assumption that certain undesignated payments were made to Chad Gatlin and that Plaintiff is entitled to 50% of those undesignated payments." Other than challenging Kraus's report, appellants do not challenge any other aspect of the damages award.

Kraus's forensic accounting report was admitted into evidence without objection. Kraus attached as exhibits to her report her curriculum vitae and the documents she reviewed for the report. Those documents included the following:

**TCB Elite Fleet, LLC**

    1. General ledgers for years 2016-2018

    2. Trail [sic] balances for years 2016-2018

    3. Federal income tax returns for years 2016 and 2017

    4. Job breakdown sheets

**Chad and Tabitha Gatlin**

    1. Personal income tax returns of each party for years 2016 and 2017

    2. Closing documents for the purchase of the Dogwood Lane property

In challenging the legal and factual sufficiency of the evidence to support the trial court's damages finding, appellants limit their attack to the conclusory nature

---

[2] The trial court made the following conclusion of law: "Plaintiff is entitled to recover actual damages in the amount of $193,000.00 for breach of the Promissory Note." The trial court's reference to a promissory note appears to be a clerical error. In its final judgment, the trial court accurately awarded damages of $193,000 for breach of contract.

11

of Kraus's report. Because appellants failed to object to the expert's report they cannot complain of the reliability of Kraus's report or her underlying methodology, technique, or foundational data. *See Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004).

Examination of the expert's underlying methodology, technique, or foundational data as part of a reliability challenge is "a task for the trial court in its role as gatekeeper, and [is] not an analysis that should be undertaken for the first time on appeal." *Id.* When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection. *Pike v. Tex. EMC Mgmt.*, LLC, 610 S.W.3d 763, 786 (Tex. 2020). In this regard, when the challenge is that the expert testimony is speculative or conclusory on its face, then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility. *See Coastal Transp. Co.*, 136 S.W.3d at 233. Expert testimony is conclusory (and an objection unnecessary) "if no basis for the opinion is offered"; it is likewise conclusory if "the basis offered provides no support" for the opinion. *Id.* at 787; *see also Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (holding affidavit conclusory and explaining that qualified expert "cannot simply say, 'Take my word for it, I know'" because credentials do not supply a basis for opinion).

"A conclusory statement asserts a conclusion with no basis or explanation." *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019). An expert's statement or opinion is conclusory when: (1) she asks the factfinder to take her word that her opinion is correct but offers no basis for her opinion or the bases offered do not

12

actually support the opinion; or (2) she offers only her word that the bases offered to support her opinion actually exist or support her opinion. *Id.* at 769.

Because Kraus's report was admitted into evidence without objection, we review her report to determine whether it asserts a conclusion with no basis or explanation. While appellants challenge both the legal and factual sufficiency of the evidence to support the damages award, in the absence of an objection to the expert's report we review only the legal sufficiency of the evidence. *See Coastal Transp. Co.*, 136 S.W.3d at 233 (permitting challenge to legal sufficiency of evidence in absence of objection to admissibility of expert report). The report begins with a description of Kraus's qualifications and a summary of the background of the case as described to Kraus. Kraus stated that she and her firm, Whitley Penn, reviewed the accounting records provided to them by TCB, including the general ledger and trial balances for 2016-2018, tax returns, and job sheets. To ascertain the amounts owed to Icet, Kraus analyzed the books and records of TCB and made adjustments sufficient to put Icet in the position he would have been in had the company been operated in the manner to which the parties agreed.

In the first section of Kraus's report, she listed several capital account corrections, which included personal expenses of the Gatlins. Kraus explained that Chad and Tabitha did not have any personal bank accounts, and appeared to be using the TCB account for their personal expenses. Kraus reviewed the general ledger detail and identified expenses that "may have been expended for [the Gatlins'] personal use instead of for TCB business purposes." Specifically, Kraus reported that TCB paid $26,355 from 2016 to 2018 for rent expense on a residence that was used by Chad and/or Tabitha as their personal residence. From February 9, 2018 through December 24, 2018, Tabitha paid $500 per week to herself and recorded those payments as professional fees. Kraus noted that absent any agreement

13

permitting a salary or guaranteed payment for Tabitha, this amount could be considered an inappropriate expenditure. Finally, the following personal expenses were noted as needing adjustment from the operational results of TCB: (1) a recreational vehicle purchased with company funds; (2) charges to retail stores such as Wal-Mart and Target that were not substantiated as business expenses; and (3) non-business-related restaurant expenses, hotel, and rental car charges "for the personal enjoyment of Mr. and Mrs. Gatlin." The personal expenses portion of Kraus's report was supported by an exhibit attached to her report in which she listed the above referenced personal expenses in detail.

Kraus's report also listed "personal draws" totaling $63,321 that were not directly attributable to any particular capital account with another $11,031 attributable to amounts paid to either Tabitha or Chad. Of the unallocated capital draw amount, $60,513 was recorded as "online transfer debit," and $2,808 was for "items such as fast food, nail salons, furniture stores, and entertainment venues." There were no personal draws allocated to Icet.

This portion of Kraus's report was supported by an exhibit, which listed several "online transfer debit" draws in addition to personal draws for Enterprise Rent-A-Car, Liquor Hut, Aramark NRG Stadium, Kolache Donut Express, Biggys Meat Market, Chick-Fil-A, Wendys, Curves Brow Bar, Chambers Nail Salon, Jack In The Box, LoveSac, and Arcade City.

Kraus adjusted the retained earnings of TCB by the cumulative effect of personal expenses, personal draws, and capital contributions. The result left Icet with an adjusted capital account balance of $144,950 and Chad with an adjusted balance of $24,443. Kraus explained that "if the personal expenses had not been paid out of the business, there would be additional net income that would flow to retained earnings."

14

In determining a "commission true-up" owed to Icet, Kraus noted the following:

- Mr. Gatlin received, on average, 18.8% of total profit;

- Mr. Icet received, on average, 4.9% of total profit;

- On many jobs, Mr. Gatlin received 20% commission while Mr. Icet received 0%;

- The job breakdown sheets are not dated or numbered in any way—making it impossible to match to earnings in a given year, or to determine if all sheets have been provided; and

- The job breakdown sheets do not appear to be the total population of jobs completed by TCB as they do not tie out to the total revenue for any year, or all years combined.

Recognizing that not all customer contracts, entity tax returns, and bank statements were provided, Kraus concluded that Icet was owed $73,808 "as true-up payment for commissions." The "commission true-up" was supported by a document listing each commission paid by TCB from August 2, 2016 through December 28, 2018.

Kraus further reviewed a parcel of real property purchased by TCB, known as the "Dogwood Property." This property was purchased for $43,561 using TCB funds, but was not listed as an inventory asset in the financial records of TCB. The deed for the "Dogwood Property," while purchased with TCB funds, was titled in the name of Chad Gatlin. TCB personnel were employed at TCB expense to repair and remodel the Dogwood Property. Relying on research from three real estate websites, Kraus estimated a sales price for the Dogwood Property at $236,446. This portion of Kraus's report was supported by printed screenshots from three real estate websites listing the value of the Dogwood Property at $241,200, $235,538, and $232,600 respectively. A copy of the cashier's check for $43,561.49 used to purchase the property was also attached as an exhibit.

Citing this court's opinion in *Hong v. Integrated Applications Eng'g, Inc.*, No.

14-06-00579-CV, 2008 WL 660650, at *6 (Tex. App.—Houston [14th Dist.] Mar. 11, 2008, pet. denied) (mem. op.), appellants assert that Kraus's "expert report as to Plaintiff's damages is incompetent opinion testimony and cannot support the judgment." In *Hong*, as in this case, no objection was made to the expert's testimony. We reviewed the sufficiency of the evidence to support damages that relied on expert testimony to determine whether the expert's opinion was conclusory, and therefore incompetent evidence. *Id*. In *Hong*, the expert testified to amounts of damages, but no exhibits were introduced to show how the expert had reached his conclusions. *Id*. at *4. The expert in *Hong* filed a report, which referenced documents that would support his conclusions. *Id*. at *5. However, the expert failed to attach those documents to his report or otherwise provide supporting evidence for his conclusions. *Id*. Concluding that the expert's testimony did not explain how he reached his conclusions, was inconsistent with the calculations and conclusions presented in his expert reports, and lacked factual substantiation in the record, we held the evidence in that case was legally insufficient to support the damage award. *Id*. at *6.

We conclude Kraus's report and the supporting documentation is factually distinguishable from the report and testimony by the expert in *Hong*. In this case, Kraus did not testify but noted in her report that she reviewed all records that were provided by TCB and the Gatlins. Appellants focus on Kraus's statement that her report was a preliminary analysis based on limited information. Appellants take Kraus's statement out of context. Kraus's full statement, quoted below, noted that the information she received was limited because there was no assurance that all financial records had been provided:

> Without additional information, including all customer contracts, entity tax returns, and all bank statements with deposit tickets and cancelled checks, among other documents, we cannot determine whether or not

we have fully quantified the total amounts owed to Mr. Icet. Our analysis is currently a preliminary analysis based upon the limited information we have received.

Appellants cannot demonstrate a lack of sufficient evidence by pointing to the limited resources available to Kraus in making her report. Appellants were in control of their books and the record reflects that not every construction job was recorded in the information turned over to Kraus. Kraus's report contained the calculations she used in calculating the profits earned by TCB after subtracting personal expenses and capital contributions. Unlike the expert in *Hong*, Kraus supported each of her conclusions with documentation.

As to Kraus's valuation of the Dogwood Property, at bottom, appellants ask this court to "evaluate the underlying methodology, technique, or foundational data used by the expert . . .." *Coastal Transp. Co.*, 136 S.W.3d at 233. Appellants did not object before or during trial on grounds that Kraus's foundation or methodology was flawed. Because appellants did not object to Kraus's methodology before or during trial, they cannot attack her methodology or the foundation supporting her opinions on appeal by way of a legal sufficiency challenge predicated on asserted flaws in the methodology. *See id*. The trial court was entitled to rely on Kraus's report in assessing damages incurred by Icet.

Considering the evidence in the light most favorable to the verdict, we conclude there is more than a scintilla of evidence to support the trial court's finding of $193,000 in damages. The evidence is legally sufficient; we therefore overrule appellants' second issue.

## CONCLUSION

Having sustained a portion of appellants' first issue we reverse that portion of the judgment that awards joint and several liability against Tabitha Gatlin and render

17

judgment that Tabitha Gatlin is not jointly and severally liable. Having overruled appellants' remaining issues, we affirm the judgment as challenged on appeal.


/s/    Jerry Zimmerer
           Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.