**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2011

No. 10-40471

Lyle W. Cayce
Clerk

UTILITIES OPTIMIZATION GROUP, L.L.C.,

Plaintiff-Appellee

v.

TIN, INC., doing business as Temple-Inland,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:08-CV-68

Before REAVLEY, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant TIN, Inc. d/b/a Temple-Inland ("Temple-Inland"), a paper mill, hired Plaintiff-Appellee Utilities Optimization Group, L.L.C. ("UO Group") to work as a contractor on two large projects involving paper machines. After the projects were complete, the parties disagreed with regard to the amount of payment Temple-Inland owed UO Group under the governing contracts. UO Group sued Temple-Inland for breach of contract. Following a trial, the jury awarded damages to UO Group. Temple-Inland sought a post-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40471

verdict judgment as a matter of law, which the district court denied. Temple-Inland appeals. For the following reasons, we REVERSE the denial of the motion for a judgment as a matter of law and RENDER judgment in favor of Temple-Inland.

I

Temple-Inland manufactures paper products. UO Group is a construction firm specializing in the fabrication, construction, and service of paper machines. Temple-Inland invited bids for two pump and installation projects, the "No. 1 Paper Machine Project" and "No. 2 Paper Machine Project." For each, Temple-Inland published a Request for Quotation instructing prospective contractors to submit their bids on a time and material not-to-exceed pricing basis. UO Group made a bid for each project, and Temple-Inland accepted both bids. In accordance with Temple-Inland's request, the pricing in UO Group's bids was on a not-to-exceed basis. Temple-Inland issued purchase orders for the projects, authorizing UO Group to begin work. Both the Requests for Quotation and the Purchase Orders required contractors to acquire a signed "Field Change Order/Authorization Form" prior to implementing any change in the scope or value of the work originally agreed to by the parties. The Purchase Orders further instructed that such "APPROVALS SHALL BE COORDINATED THROUGH THE TEMPLE-INLAND PROJECT REPRESENTATIVE IDENTIFIED ON THIS PURCHASE ORDER," and each Purchase Order identified Steve Hospodar ("Hospodar") as the Project Manager and Temple-Inland's representative for the project. Both Purchase Orders expressly incorporated the terms of a Purchase of Services Contract, an umbrella agreement between Temple-Inland and UO Group "intended to apply to any services that have been requested by Temple-Inland and accepted by [UO Group]." The Purchase of Services Contract states: "No change order shall be binding upon Temple-Inland unless approved in writing by Temple-Inland prior

2

No. 10-40471

to commencement of the work indicated by such change order." The contract further explains that any waiver of terms must be in writing:

> No claim or right arising out of a breach by Contractor of any or all of the terms and conditions of this purchase of services contract can be discharged in whole or in part by a waiver, renunciation, or failure to enforce such claim or right unless Temple-Inland expressly consents thereto in a separate writing.

The parties do not dispute that the Purchase of Services Contract, Purchase Orders, UO Group's bid proposals, and Temple-Inland's Requests for Bids form the basic contractual framework governing the relationship between Temple-Inland and UO Group. Prior to beginning work on Paper Machines No. 1 and 2, all contractors were required to attend a contractor orientation during which they were shown a PowerPoint presentation stating that "Owner's Rep [Hospodar] will not be authorized to approve changes in scope of work until he has the approval of Maintenance Manger-Bob Dansby," and that "[a]ny work performed without authorization is done strictly at liability to the contractor."

Due to various delays and unexpected complications, UO Group's work on the projects greatly exceeded both the time and the cost originally expected. According to testimony by UO Group's foreman Ben Snyder, on multiple occasions Hospodar either requested changes in the scope of the work or acquiesced to changes in the scope of the work. According to Snyder, when he brought to Hospodar's attention that these instances would be changes in the scope of the work, Hospodar repeatedly encouraged Snyder to move forward with the job and promised he would "take care of it." In accordance with the terms of the contracts, UO Group had each of its time sheets signed by Hospodar. Hospodar continued to sign time sheets, even after the work UO Group was performing had exceeded the scope of what the parties had originally agreed upon. Neither UO Group nor Hospodar, however, ever filed the required written change authorization forms. When UO Group finally submitted its invoices,

No. 10-40471

Temple-Inland refused to pay any amount beyond the not-to-exceed price of each contract, minus alleged deductions for work ultimately completed by other contractors.

Based on diversity of citizenship, UO Group sued Temple-Inland in the district court for breach of contract. The case was tried before a jury. Before the case was submitted to the jury, Temple-Inland filed a motion for judgment as a matter of law. The district court denied the motion. The jury found that Hospodar had the authority to waive the written change order requirement, that he in fact had done so, and that Temple-Inland was liable for payment related to the extra work. Temple-Inland filed a post-judgment motion for judgment as a matter of law, which was also denied. The court ordered Temple-Inland to pay $172,031.31 in damages for breach of contract related to Paper Machine No. 1 and $83,568.19 for breach of contract related to Paper Machine No. 2, as well as pre- and post-judgment interest. This appeal follows.

II

Temple-Inland argues that the district court erred by denying its motion for judgment as a matter of law on the basis of UO Group's lack of evidence that Hospodar had actual or apparent authority to waive the contractual requirement of a written change order. "A motion for judgment as a matter of law should be granted if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for a party.'" *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) (quoting FED. R. CIV. P. 50(a)). A district court should "grant a motion for judgment as a matter of law only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Id.* (internal quotation marks and citation omitted). "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam) (internal

No. 10-40471

quotation marks and citation omitted). Although we review the district court's denial of the motion de novo, "our standard of review with respect to a jury verdict is especially deferential." *Id.* (internal quotation marks and citations omitted).

UO Group points to a number of pieces of evidence that, it argues, permitted a reasonable jury to conclude the Hospodar had actual or apparent authority to waive the written change order requirement. It notes that Hospodar was the designated "Project Manager" for the paper machine projects; that Hospodar's testimony suggested that he may have, on other jobs, failed to obtain written change orders and had never been disciplined by Temple-Inland; that Hospodar was the Project Manager for a previous Temple-Inland project involving UO Group, that the contract for that project had a written change order requirement, but that Hospodar had authorized changes in the scope of work without written change orders. When UO Group billed Temple-Inland for the extra work on the prior project, Temple-Inland paid for it. UO Group also introduced files relating to other Temple-Inland jobs—not involving UO Group— on which Hospodar had served as Project Manager. The files did not show written change orders on those jobs, either—although it was disputed whether the absence of the orders meant that none had been filed. Finally, UO Group argues that Hospodar, with Temple-Inland's knowledge, took actions that changed the scope of the contract without a written change order. For example, Hospodar hired an additional contractor to assist UO Group, reducing the scope of the work UO Group would perform.

"Absent actual or apparent authority, an agent cannot bind a principal." *Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007) (citing *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 22 (Tex. App.—San Antonio 2006, pets. denied)). "Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Res., Inc. v. Griego*, 221 S.W.3d

No. 10-40471

592, 597 (Tex. 2007) (per curiam) (citing *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944)). "Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses." *Tex. Cityview*, 227 S.W.3d at 352 (citing *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.);   *Lifshutz*, 199 S.W.3d at 22). "The extent of an agent's authority is determined in light of all surrounding circumstances, including, inter alia, the parties' relations to one another, the undertaking in which the parties are engaged, and the general usages and practices of those engaged in such undertakings."   *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1297 (5th Cir. 1994).

"Apparent authority," in contrast, "is based on estoppel, arising 'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)).  Three elements must be proven to establish apparent authority: "(1) a reasonable belief in the agent's authority; (2) generated by some holding out or neglect of the principal; and (3) justifiable reliance on the authority." *2616 S. Loop L.L.C.*, 201 S.W.3d at 356 (citing *Garza v. Williams Bros. Constr. Co.*, 879 S.W.2d 290, 294 (Tex. App.—Houston [14th Dist.] 1994, no writ)).

Key to the tests for both actual and apparent authority is the need for some action or omission by the principal, not merely the agent. "An agent's authority . . . depends on some communication by the principal either to the agent ([to establish] actual . . . authority) or to the third party ([to establish]

6

apparent . . . authority)." *Gaines*, 235 S.W.3d at182 (citing *Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989)).  Hospodar's own actions toward UO Group cannot establish actual authority—express *or* implied—because they are not the actions of the principal.  UO Group has not identified any statements by Temple-Inland itself that would have allowed Hospodar to believe he had authority to waive the written change order requirements—particularly in light of the clear contractual language to the contrary.  While UO Group makes much of the Project Manager's contractual authority to "coordinate" changes, the language referring to coordination appears alongside the written change order requirements themselves.  Any fair reading of the contracts would conclude that a project manager's coordination authority was not intended as a substitute for a written change order.

Similarly, the acts of the agent alone cannot create apparent authority. *See Gaines*, 235 S.W.3d at 183. Even if Hospodar did hold himself forth as having the authority to waive the written change order requirement, a finding of apparent authority would require that Temple-Inland itself either knowingly allowed him to do so, or failed to exercise ordinary care in such a way that would cause a reasonably prudent person to misapprehend the scope of Hospodar's authority.  The evidence of either knowledge or lack of ordinary care, however, is scant.  Temple-Inland, through its contractual provisions and later its PowerPoint presentation, made clear that formal approval was required for changes in the scope of the work.  "Apparent authority is not available where the other party has notice of the limitations of the agent's power." *Streetman, v. Benchmark Bank*, 890 S.W.2d 212, 216 (Tex. App.—Eastland 1994, writ denied) (citation omitted).  Moreover, while Temple-Inland administrative manager Sherry Stinnett did testify that she sometimes declined to enforce the written change order requirement for small, inexpensive changes in scope, such testimony by no means shows either an intent by UO Group to allow project

No. 10-40471

managers to waive the requirement in all settings, or a lack of ordinary care with regard to large deviations in scope, such as those here.

We cannot agree, therefore, that UO Group presented sufficient evidence for a reasonable jury to conclude that Hospodar had either actual or apparent authority to waive the binding requirement that changes in the scope of UO Group's work were to be accompanied by written change orders. There is moreover no evidence that any other purported agent of UO Group waived the written change order requirement. UO Group therefore improperly exceeded the scope of the work it had been contracted to perform, without following the appropriate procedures to receive authorization for those changes in scope. Because the scope of work was never changed, UO Group was not free to bill for any extra work and accordingly was bound to the original not-to-exceed price.

III

Based on the foregoing, the district court's denial of Temple-Inland's Post-Verdict Motion for Judgment as a Matter of Law is REVERSED and the district court's judgment is VACATED. The district court's award of attorney's fees to UO Group is likewise VACATED. A take-nothing judgment is RENDERED in favor of Temple-Inland.