# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-20643

————

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2019

Lyle W. Cayce
Clerk

In the matter of:  DAVID C. RUSSELL,

> Debtor.

JANNA F. RUSSELL,

> Appellee,

versus

DAVID C. RUSSELL; RONALD J. SOMMERS,

> Appellants.

————

Appeals from the United States District Court
for the Southern District of Texas

————

Before OWEN, Chief Judge, and JONES and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Janna Russell sued David Russell, her ex-husband and a Chapter 7 debtor, in bankruptcy court over a debt of $32,500 plus interest.  After an evidentiary hearing, the bankruptcy court ruled for David on the record, finding that David had paid the debt.  The district court reversed, holding that David had not satisfied his obligation to Janna as a matter of law.  We affirm the district court.

No. 18-20643

I.

This case presents one snippet of a ten-plus-year legal battle between ex-spouses. The dispute began when Janna filed a petition to modify David's and her parent-child relationship order. A Texas state court ordered David and Janna to mediation, where they executed a mediation settlement. The order approving the settlement mandated that David pay Janna $32,500. On receipt of payment, Janna was to execute certain deeds to David.

After David either failed or refused to pay Janna, the state court ordered the parties to arbitration. The resulting arbitration order awarded Janna $32,500 plus interest. In relevant part, the arbitration order states,

> 9.6  IT IS ORDERED that said money order, certified check or cashier's check shall be made payable to "Janna Russell" only and shall not have any other endorsement.
>
> 9.7  IT IS ORDERED that if payment of the judgment together with post judgment interest at 5% is made by DAVID CHRISTOPHER RUSSELL to JANNA RUSSELL in cash, then JANNA RUSSELL shall execute the Special Warranty Deeds listed above in 9.3.1, 9.3.2, 9.3.3 and DAVID CHRIS-TOPHER RUSSELL shall execute the Special Warranty Deed listed in 9.4.1 on the same day the judgments are paid in cash.

Janna expressly sought provisions requiring payments to go directly to her.

During the state proceedings, Janna and her attorney Ellen Yarrell found themselves at odds and decided to part ways. On December 23, 2010, two days after the state court had entered its arbitration order, Yarrell moved to withdraw from representing Janna. Janna agreed and signed the Order on Motion of Withdrawal of Counsel on December 30, 2010. At that time, Yarrell claimed that Janna owed her over $60,000 in unpaid attorney fees.

In a December 30, 2010, email, Yarrell asked Janna to sign the deeds due to David on receiving his $32,500 payment. Yarrell also asked Janna to

No. 18-20643

sign a statement authorizing Yarrell to collect David's payment on her behalf. Yarrell stated that she would then deposit the money to Janna's account balance with her law firm. In return, Yarrell offered to sign a complete release for the rest of the disputed attorney fees. Janna rejected that offer and stated that she had been "very clear about [her] position" with Yarrell, David, and David's attorneys, and she would "not be pressured or coerced . . . into signing the deed without [David] first paying [her] directly the $32,500." Janna also expressed concern that Yarrell was not acting in her best interest and repeatedly informed Yarrell that she was not authorized to accept the $32,500.

According to Janna, David tried to manipulate Janna's conflict with Yarrell to "negotiate a better deal." In particular, Janna claims that David threatened to deliver the settlement funds to Yarrell unless Janna dismissed an unrelated appeal. To support that claim, Janna presents emails from David.[1]

---

[1] Janna first presents a December 28, 2010 email in which David allegedly wrote,

> I suggest that you let me pay you directly the money. . . . [Yarrell] has tried to get me . . . to deposit the 32,500.00 into her trust account and I think that is so she could keep the money herself without paying you.

> By doing as I suggest, we each get our deeds and YOU get the money—not Ellen. In return for my goodwill, I would also like you to dismiss your appeal if we do things this way so that we can finally be done with all of this and we can stop paying lawyers.

At the hearing before the bankruptcy court, David claimed that Janna had fabricated that email. The district court, misapplying the standard of review, erroneously relied on that email to conclude that David threatened to deliver the funds to Yarrell unless Janna dismissed her appeal on an unrelated claim. But the district court could have based its conclusion on a January 27, 2011, email in which David wrote,

> I would much rather give this money to you than to your attorney, but I guess that is up to you. If you truly do have ALL the deeds signed, I do not see a problem meeting with you at Chase Bank. This really should not be that hard.
> [My attorney] just called while I was typing this.

> I can meet you at the Chase Bank on Louetta at 9:30 AM tomorrow. I will have the deeds I signed and had notarized. I will need to to [*sic*] have the deeds signed that you are to sign. You will also need to sign an appeal dismissal letter. I have attached this for your review. This can be notarized at the Bank as well.

At the hearing, David admitted to sending this and attaching an appeal dismissal letter.

No. 18-20643

On April 15, 2011, David went to Yarrell's office, unannounced, and paid her $32,500 in cash. Because David did not receive Janna's deeds—which, per the arbitration order, he was entitled to on paying Janna $32,500—on June 6, 2011, David filed a motion "to compel signature on documents." A Texas court denied David's motion.

When David filed for Chapter 7 bankruptcy in 2016, Janna filed two separate proofs of claim, the first of which is the subject of this appeal. David, joined by Ronald Summers, the Chapter 7 trustee, objected to the first claim, asserting that David had paid the claim by delivering cash to Yarrell. The bankruptcy court held an evidentiary hearing on that claim, at the end of which the court announced findings and conclusions on the record. Based on inconsistencies in David's and Janna's testimony, the court "discount[ed] their testimony to the extent that it [was] uncorroborated by documents that [the court] believe[d] in." After discounting both of their testimony, the court noted that both parties agreed that David paid Yarrell the cash. Finding that Janna got "the benefit of the money," the court entered judgment for David, allowing Janna's claim for only the interest that had accrued as of the time that David paid Yarrell. The district court reversed, holding that as a matter of law, David's payments did not satisfy his obligation to Janna.

II.

David and his trustee maintain that the district court erred in reversing the bankruptcy court. "This [c]ourt reviews the district court's decision by applying the same standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied." *Barron & Newburger, P.C. v. Tex. Skyline, Ltd.* (*In re Woerner*), 783 F.3d 266, 270 (5th Cir. 2015) (en banc) (internal quotation marks omitted). Consequently, "[w]e review the bankruptcy court's findings of fact for clear error and its conclusions of law *de*

*novo.*" *Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 701 (5th Cir. 2003). "Moreover, when the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if we would have weighed the evidence differently." *Bradley v. Ingalls* (*In re Bradley*), 501 F.3d 421, 434 (5th Cir. 2007). We "must give due regard to the [bankruptcy] court's opportunity to judge the witnesses' credibility." FED. R. CIV. P. 52(a)(6).

The bankruptcy court did not address whether Yarrell was authorized to act on Janna's behalf[2] but instead held that because Janna "got the benefit of the money"—which Janna disputes—the debt had been paid. That reasoning is incomplete. Debt payments made to a creditor's agent do not bind the creditor unless the agent is authorized to collect the payment on behalf of the creditor.[3] Whether that authority exists "depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). It does not depend on whether the principal benefits from the transaction.[4] Because payment is an affirmative defense, the burden is on the debtor to prove that the third party was authorized to receive payment on behalf of the debtor. *See* TEX. R. CIV. P. 94–95; *see also Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). David's payment to Yarrell did not terminate his obligation to Janna because Yarrell was not authorized to transact on Janna's behalf.

---

[2] Appellees did, however, raise that issue at the bankruptcy court hearing.

[3] *See Utils. Optimization Grp., L.L.C. v. TIN, Inc.*, 440 F. App'x 249, 252 (5th Cir. 2011) (per curiam) ("Absent actual or apparent authority, an agent cannot bind a principal.") (quoting *Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007, pet. dism'd)).

[4] The parties have not raised the issue of ratification at any point in this litigation, so it is waived. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

No. 18-20643

A.

"Actual authority is authority that the principal intentionally conferred on the agent or allowed the agent to believe was conferred." *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied). The terms of the arbitration order and Janna's instructions to Yarrell show that Janna did not actually authorize Yarrell to collect David's payment.

Paragraph 9.6 of the order requires that any negotiable instrument "shall be made payable to 'Janna Russell' only and shall not have any other endorsement." Paragraph 9.7 specifies the timeline for Janna to deliver deeds to David if the debt "is made by DAVID CHRISTOPHER RUSSELL to JANNA RUSSELL in cash." The text is clear—David must pay Janna directly.[5]

Janna also did not allow Yarrell to believe that she was authorized to transact on Janna's behalf. By the time Yarrell accepted David's payment on Janna's behalf, their relationship had soured. They were fighting over $60,000 of disputed attorney fees, and Yarrell had already filed a motion to withdraw from representation. Yarrell knew that Janna did not trust her to collect the payment. When asked why the arbitration order included terms mandating that any negotiable instrument be made to Janna Russell only, Yarrell responded, "Janna requested it." On top of that, Janna also expressly rejected Yarrell's request for Janna to sign a statement authorizing Yarrell to collect the money.

When Yarrell accepted David's payment on Janna's behalf, she did so against both the terms of the arbitration order and Janna's instructions. Accordingly, Yarrell was not actually authorized to collect on Janna's behalf.

---

[5] Supporting this conclusion, Yarrell testified that Janna specifically sought terms mandating that David pay her directly. As the district court noted, that was necessary because of the ongoing disputes.

No. 18-20643

B.

Apparent authority arises "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Gaines*, 235 S.W.3d at 182 (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)). "A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996) (per curiam). A principal is not bound where the other transacting party "has notice of the limitations of the agent's power." *G.D. Douglass v. Pan., Inc.*, 504 S.W.2d 776, 779 (Tex. 1974).

David and his trustee contend that the record, in light of the credibility of the witnesses as determined by the bankruptcy court, supports David's claim that Yarrell was apparently authorized to collect on Janna's behalf. In support of that contention, David and his trustee aver that Yarrell was apparently authorized because she was still Janna's attorney of record. Even though Yarrell had filed a motion to withdraw, they aver that "withdrawal is not complete until the presiding judge signs an order of withdrawal."[6]

After accounting for the bankruptcy court's "discount[ing]" David's and Janna's testimony to the extent it was "uncorroborated by documents that [the court] believe[d] in," the record still establishes that David knew Yarrell was not authorized to collect the payment on Janna's behalf. In David's January 27

---

[6] David and his trustee cite TEXAS RULE OF DISCIPLINARY PROCEDURE § 1.15, cmt. 3 for this proposition, which provides that "[w]hen a lawyer has been appointed to represent a client and in certain other instances in litigation, withdrawal ordinarily requires approval of the appointing authority or presiding judge."

email—which he admitted to sending—he conditioned paying Janna, as distinguished from Yarrell, on Janna's signing an attached notice of non-suit pertaining to an unrelated appeal. Whether Yarrell was Janna's attorney of record makes no difference. That does not negate David's actual knowledge that Janna did not authorize Yarrell to collect the payment. The terms of the arbitration order and Yarrell's motion to withdraw from representation also reinforce that David was on notice that Yarrell was not authorized to accept his payment.

Apparent authority is based on estoppel, an equitable doctrine. *Gaines*, 235 S.W.3d at 182. It would be inequitable to allow a debtor who transacts with an unauthorized agent, against the wishes of the principal, to bind the principal. "No principle is better settled in law, nor is there any founded upon more obvious justice, than that if a person dealing with an agent knows that he is acting under a circumscribed and limited authority and that his act is outside of and transcends the authority conferred, the principal is not so bound." *Gen. Contract Purchase Corp. v. Sumner*, 49 S.W.2d 960, 961 (Tex. Civ. App.—Amarillo 1932, writ dism'd). Because David "ha[d] notice of the limitations of [Yarrell's] power" to accept his payment, Janna is not bound by it. *See G.D. Douglass*, 504 S.W.2d at 779.

\* \* \* \* \*

As a matter of law, David's payment to Yarrell did not extinguish his obligation to Janna. The judgment of the district court, reversing the bankruptcy court, is AFFIRMED.