# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00093-CV

**Appellant, Houndstooth Capital Real Estate, LLC // Cross-Appellant, Maverick Title of Texas, LLC d/b/a Texas Title**

**v.**

**Appellees, Maverick Title of Texas, LLC d/b/a Texas Title; WFG National Title Company of Texas d/b/a WFG National Title Company and WFG National Title Insurance Company; and Wally Tingley & Associates, P.C. // Cross-Appellee, Houndstooth Capital Real Estate, LLC**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-002304,
### THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## MEMORANDUM OPINION

Houndstooth Capital Real Estate, LLC, appeals from take-nothing summary judgments on its claims against appellees—a title company, a title agent, and an escrow agent—arising from a real-estate transaction involving a forged deed. Houndstooth contends that, by failing to issue a title insurance policy or by improperly releasing $205,000 in escrowed funds to a defrauding party, one or more of the appellees breached a fiduciary duty, were negligent, breached a contract, committed fraud, fraudulently induced a transaction, and breached an Insurance Code provision, resulting in recoverable lost profits. Houndstooth alleged that various appellees were liable directly or vicariously and contends that genuine issues of material fact exist on each of these claims. We will affirm the judgment.

# BACKGROUND[1]

This case centers on the failed attempt by Houndstooth, a real-estate investment company owned by Lincoln Edwards, to purchase a lot on East 16th Street in Austin (the Lot). Sam Higgins bought the Lot in 1974. A warranty deed recorded in the Travis County records on August 8, 2017, stated that Higgins transferred the Lot to CETA Invest Austin. CETA, an entity owned by Ashley Crawford, entered into an agreement to sell the Lot to Juanita William for $200,000.

On September 20, 2017, William offered to assign her right to purchase the Lot to Houndstooth for $205,000. That same day, Houndstooth, William, and CETA executed an assignment of purchase-and-sale-agreement rights. The closing was originally scheduled for September 29, 2017, but was delayed when the escrow agent, Wally Tingley & Associates, P.C., (Tingley), discovered a memorandum of purchase and sale agreement from another company in the county records. Edwards testified at deposition that William explained that she had previously assigned purchase contracts on the Lot and a nearby lot, that heirship issues on the neighboring lot had delayed its sale, and that the previous assignee chose not to buy the Lot until it could buy both lots; because the Lot had no heirship issues, William put her purchase interest back on the market. Edwards said Crawford obtained a release from the previous assignee, and the closing was rescheduled. Houndstooth alleged that a Tingley employee assured Edwards that the Lot did not have the heirship issues the other lot did and that Maverick would not issue the title-insurance policy if it did.

---

[1] This background section is not exhaustive but serves to provide context for the discussions to follow.

This transaction closed on October 6, 2017. Maverick Title of Texas, LLC d/b/a Texas Title served as the title agent for WFG National Title Insurance Company. In the Commitment for Title Insurance, signed by representatives of WFG and Maverick, WFG promised to issue a title insurance policy if several specified conditions were met, including resolution to WFG's satisfaction of any "matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment"; those conditions were in Schedule C which was countersigned by Tingley. Edwards, on behalf of Houndstooth, initialed that he understood and acknowledged understanding paragraph 10 of the Last Closing Document to Be Executed, which stated

> Neither the Commitment for Title Insurance nor the Owner Title Policy are abstracts of title, title reports or representations of title and should not be relied upon as such and that, **although documents have been signed, money collected and/or disbursed, a final down-date search may be made which could result in an Owner Title Policy not being issued**.

(Emphasis added.) Houndstooth delivered $205,000 to an escrow account, and, after the closing documents including the deed from CETA to Houndstooth were executed, Tingley wired the funds to CETA's Bank of America account. Houndstooth alleges that Tingley represented that Houndstooth would receive its title-insurance policy within four to five weeks. Houndstooth was considering selling the Lot, for which it received offers ranging from $290,000 to $325,000.

On October 13, 2017, Bank of America alerted Maverick to the possibility of a fraudulent transaction based on the fact that CETA was trying to withdraw all the closing funds from an account that had only recently been opened. Maverick told Houndstooth about the fraud alert. Bank of America eventually stopped payment on the funds that were being withdrawn.

Houndstooth alleged that, on October 18, 2017, Maverick informed Houndstooth that no title policy would be issued, the premium paid for the policy would not be returned, the funds that had been placed in escrow would not be returned, and the chain of title was in question. On October 27, 2017, Higgins, who bought the Lot in 1974, signed a Fraud Affidavit stating that the deed conveying the Lot to CETA Invest Austin was a forgery.

Some of the escrow funds have been returned to Houndstooth. Bank of America recovered a $5,000 assignment fee for the closing plus $57,740.69 remaining in the CETA account and returned the $62,740.69 to Maverick; almost a year after the closing, Maverick sent Houndstooth a check for $62,740.69 on September 17, 2018. The United States Secret Service recovered an additional $69,931.66 of the escrow funds and returned that amount to Houndstooth, making the total returned $132,672.35 of the $205,000 transferred.

Houndstooth sued Maverick first, then WFG. After Maverick filed claims against Tingley, Houndstooth added claims against Tingley. Houndstooth sued for breach of contract, common-law fraud, fraudulent inducement, breach of fiduciary duties, negligence, and violations of the Insurance Code and the Texas Deceptive Trade Practices Act. Houndstooth sought compensatory damages including lost profits.

In a separate action Houndstooth sued Higgins and Crawford, seeking to adjudicate ownership of the Lot. *See Houndstooth Cap. Real Est. I, LLC v. Higgins*, No. D-1-GN-17-006014, (250th Dist. Ct., Travis County, Tex. Dec. 19, 2019). The agreed declaratory judgment in that cause provides that the purported warranty deed conveying the Lot from Higgins to CETA was fraudulent, null and void from its inception, and of no legal effect. *Id.* The judgment also provides that all right, title, and interest to the Lot had remained vested in Higgins since he received title.

4

In this case, WFG, Maverick, and Tingley all moved for summary judgment on all claims against them. The trial court granted their motions and rendered judgment that Houndstooth take nothing from them on its claims and that Maverick take nothing by its indemnity claim against Tingley.[2] The trial court did not specify the basis for its judgment.

**STANDARD OF REVIEW AND SUMMARY JUDGMENT STANDARD**

We review summary judgments de novo. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). If the trial court does not specify the grounds for its summary judgment, we must affirm the summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Id*. at 216. A defendant is required only to meet the plaintiff's case as pleaded, not every claim that might be raised. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995).

A movant seeking a no-evidence summary judgment must assert that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each element challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper when the nonmovant's evidence amounts to "'more than a scintilla of probative evidence to raise a genuine issue of material fact.'" *Boerjan*, 436 S.W.3d at 310 (quoting *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009)).

---

[2] Houndstooth also sued WFG National Title Company of Texas but did not appeal the judgment favoring that defendant.

5

A party moving for a traditional summary judgment must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life,* 128 S.W.3d at 215-16. If the movant establishes its right to summary judgment, the burden shifts to the nonmovant to raise a genuine issue of material fact. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). Parties must provide citations to the record evidence that supports their argument; trial and appellate courts are not required to sift through the evidence in search of support for the nonmovant's argument that a fact issue exists. *Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 230 (Tex. App.—Austin 2018, no pet.); *Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied).

## DISCUSSION

Houndstooth raises seven issues on appeal, challenging the summary judgment against its causes of action and claim for lost profits, which may have been based on any of several traditional and no-evidence grounds by the three appellees.

6

## I.      Breach of contract

By issue three, Houndstooth contends that the trial court erred by granting summary judgment on its breach-of-contract claims against WFG and Maverick because Houndstooth performed all its obligations under that contract.

### A.      Elements

A claim for breach of contract requires proof of (1) the existence of a valid contract, (2) performance or tendered performance by the person asserting the claim, (3) breach of the contract by the other party, and (4) damages sustained by the claimant as a result of the breach. *ACI Design Build Contractors Inc. v. Loadholt*, 605 S.W.3d 515, 519 (Tex. App.—Austin 2020, pet. denied) (citing *C.W. 100 Louis Henna, Ltd. v. El Chico Rests., L.P.*, 295 S.W.3d 748, 752 (Tex. App.—Austin 2009, no pet.)).

### B.      Allegations

Houndstooth alleged in its live petition that unspecified "Defendants" breached their agreement with Houndstooth to issue a title policy as contemplated by the Commitment. Houndstooth also alleged that Tingley, Maverick, and WFG breached an agreement to perform escrow duties. It alleged that the appellees have agency relationships that result in joint liability. It alleged that WFG hired Maverick as its insurance agent, Maverick hired Tingley as the escrow agent, and Tingley acting as the agent for both failed to properly perform its escrow duties by sending Houndstooth's funds to a fraudulent party in breach of the agreement.

### C.      Motions and arguments

#### 1.  WFG

WFG argued in its traditional motion that the Commitment was not a contract but was a form in which it offered to issue a title-insurance policy, and that Houndstooth failed to

7

satisfy the conditions of the offer, including by failing to dispose of the Fraud Affidavit to WFG's satisfaction. WFG asserted that Houndstooth had no evidence that Houndstooth could have acquired fee-simple title or a sellable interest, that it satisfactorily disposed of the Fraud Affidavit, or that WFG breached a valid, enforceable contract.

Houndstooth contends that a question of fact exists concerning whether WFG breached its agreement to issue a title policy and release purchase money only when it could effectively transfer title to Houndstooth. Houndstooth contends that no party ever suggested at the time of the transaction that Houndstooth failed its obligations under the Commitment as evidenced by the filing of the deed in public records after the closing. Houndstooth contends that it had fully performed when WFG learned of the fraud and therefore WFG was obliged under the Commitment to issue the title insurance.

The Commitment states that it "is a legal contract between you and us. The Commitment is not an opinion or report of your title. It is a contract to issue you a policy subject to the Commitment's terms and requirements." The Insurance Code states that a "'commitment for title insurance' means a title insurance form under which a title insurance company offers to issue a title insurance policy subject to stated exceptions, requirements, and terms." Tex. Ins. Code § 2701.001(a). The Code explains further:

> A commitment for title insurance constitutes a statement of the terms and conditions on which a title insurance company is willing to issue its policy. A title insurance policy or other title insurance form constitutes a statement of the terms and conditions of the indemnity under the policy or form.

Id. § 2701.001(b). Consistent with that statutory language, the Commitment states:

> We, WFG National Title Insurance Company, will issue our title insurance policy or policies (The Policy) to You (the proposed insured) upon payment of the premium and other charges due, and compliance with the requirements in Schedule C. Our Policy will be in the form approved by the Texas Department of Insurance at the date of issuance, and will insure your interest in the land described in Schedule A.

Schedule A of the Commitment states that "[t]he interest in the land covered by this Commitment is: Fee Simple." Schedule C states that

> Your Policy will not cover loss, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:
>
> * * *
>
> 4. Any defect, lien or other matter that may affect title to the land or interest insured that arises or is filed after the effective date of this Commitment.

The Commitment was effective on September 29, 2017, and was effective for ninety days.

WFG moved for summary judgment on grounds that Houndstooth did not satisfy the condition precedent of resolving the title issue that arose after the Commitment was effective. A condition precedent is an event that must happen or be performed before a right can accrue to enforce a contract. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). When a promise is subject to a condition precedent, there is no liability or obligation on the promisor (and thus no breach of the contract by the promisor) until such condition or contingency is performed or occurs. *Roberts v. Clark*, 188 S.W.3d 204, 212 (Tex. App.—Tyler 2002, pet. denied). WFG committed to issuing the title-insurance policy upon "compliance with the requirements of Schedule C." Schedule C required Houndstooth to dispose to WFG's satisfaction any matter that affected title to the land that arose or was filed after the effective date

9

of the Commitment before the policy issued. Houndstooth alleged that "Schedule C of the Commitment for Title Insurance provides a checklist of conditions that need to be met in order for the Title Insurance to be issued and effective." Compliance with the requirements of Schedule C was a condition precedent to WFG's commitment to issue the title-insurance policy. The Fraud Affidavit that affected title to the land or interest insured was signed on October 27, 2017, and filed after the September 29, 2017 effective date of the Commitment and before any policy was issued. Houndstooth did not resolve the issue affecting title to the land raised by the Fraud Affidavit to WFG's satisfaction within the ninety-day effective period of the Commitment. Houndstooth's argument that no parties contended at closing that it had failed to fulfill its obligation is unavailing because the Commitment requires Houndstooth to resolve title issues that arise after the Commitment but before the policy is issued; closing and even filing the deed are not mentioned as factors affecting that condition precedent to issuing the policy. Houndstooth produced no evidence that it satisfied this condition precedent, and WFG's evidence shows that no genuine issue of material fact on this issue exists. Because the condition precedent to WFG's obligation to issue the title-insurance policy was not satisfied, WFG did not breach the Commitment.

On appeal, Houndstooth argues that WFG also breached a contract with respect to the escrow money. In its live petition, Houndstooth alleged that Maverick and WFG "breached their agreement with Plaintiff regarding the issuance of a title policy." Houndstooth's Edwards testified in his deposition that the contract on which Houndstooth sued was the Commitment. Houndstooth alleged that it and "Defendants had a valid agreement . . . for Defendants to issue a title policy, as contemplated in the Commitment for Title Insurance" and that WFG and the other appellees "are responsible for breaching the agreement by failing to perform its escrow duties as

10

promised." But the Commitment for Title Insurance does not mention escrow money. No genuine issue of material fact exists regarding whether WFG violated the Commitment by any escrow-related acts or omissions.

### 2. Maverick

Maverick similarly moved for summary judgment on grounds that the breach-of-contract claim against it failed because the Commitment was not a contract and also contended that the Commitment was between WFG and Houndstooth, not Maverick.

Houndstooth did not challenge the judgment on its breach-of-contract claim against Maverick in its initial appellate brief. Houndstooth mentions the breach-of-contract claims against Maverick in its statement of the issues in its initial brief but does not discuss in the substantive argument section (focusing on its claim that WFG breached the Commitment), and mentions it in passing in the discussion section of its reply brief. Appellate issues are waived if raised only in the reply brief. *See McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *5 n.11 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.) (citing *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)); *see also Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 644 (Tex. App.—Dallas 2013, no pet.) (issue not supported by argument presents nothing for court to review). More critically, the reasoning supporting the grant of summary judgment to WFG on the claim for breach of the Commitment supports a grant of summary judgment to Maverick on the breach-of-contract claim against Maverick.

### 3. Tingley

Tingley moved for summary judgment on grounds that there was no contract between Houndstooth and Tingley. Houndstooth's live petition did not allege breach of contract

by Tingley except in the passage quoted above concerning escrow duties. As discussed, the live petition concerned breach of the Commitment, and the Commitment did not involve escrow duties.

Houndstooth has not demonstrated that the trial court erred by granting appellees' motions for summary judgment on Houndstooth's breach-of-contract claims.

## II.     Fraud and Fraudulent Inducement

By issue four, Houndstooth contends that a genuine issue of material fact exists on its fraud claim against WFG and Maverick for issuing the Commitment and accepting premium payments but failing to disclose suspicions of fraud in the transaction and failing to issue a title policy even though Houndstooth met all its obligations under that Commitment. By issue five, Houndstooth contends that a genuine issue of material fact exists on its fraudulent-inducement claim against WFG, Maverick, and Tingley for fraudulently inducing Houndstooth into a real-estate transaction while reassuring it that due care would be taken in the transaction, only to fail to honor the agreement or issue a title policy once it was clear WFG, Maverick, and Tingley failed to properly conduct their duties in the transaction.

### A.     Elements

A claim for fraud requires proof of a material representation that (1) was false, (2) was either known to be false when made or was asserted without knowledge of its truth, (3) was intended to be acted upon, (4) was relied upon, and (5) caused injury. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). Fraudulent inducement has the same elements as fraud but arises only in the context of a contract and requires proof of the existence of a contract induced by fraud. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

12

Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform. *Id.*

### B. Allegations

Houndstooth alleged in its live petition that "Defendants" committed fraud by failing to disclose information known to Maverick and WFG and taking Houndstooth's money with no intention of performing. Houndstooth also alleged that Defendants implicitly represented as an escrow agent that, "when they wired Houndstooth's funds, that they could deliver marketable title." Houndstooth alleged that it relied on that representation, did not receive marketable title, and lost funds.

Houndstooth alleged that WFG and Maverick fraudulently induced Houndstooth to wire $205,000 to Defendants. Houndstooth alleged that, but for representations by Maverick and WFG that induced it to close on the Lot, it would not have wired funds that Maverick and WFG "have determined they can just keep."

### C. Motion and arguments

#### 1. WFG

WFG filed a traditional summary-judgment motion on the fraud and fraudulent-inducement claims on grounds that Houndstooth's reliance on the commitment as a representation of the state of the title was misplaced. Further, WFG contended that it represented only that title "appeared" to be vested in CETA, and that Houndstooth did not rely on any representation by WFG before entering the purchase contract because Houndstooth had entered the purchase contract before the Commitment was signed. WFG contended that it and Houndstooth never entered a contract for title insurance because Houndstooth did not obtain fee-simple title to the Lot and failed to satisfy conditions precedent under Schedule C.

WFG contended that Houndstooth could not show reliance on any WFG representations with respect to the purchase contract because Houndstooth took assignment of William's interest before entering the Commitment. WFG further contended that Houndstooth had no evidence that it could have acquired a fee-simple interest in the Lot as required by the Commitment or that it disposed of the Fraud Affidavit.

Houndstooth relied on Edwards's affidavit statements that Houndstooth performed all of its obligations under the Commitment that were within its power, complied with all instructions, and tendered the full payment, which WFG's representations made him believe would cause WFG to deliver marketable title. Houndstooth contended that the Commitment showed that "Defendants" represented that record title to the Lot was legally vested in CETA, a representation that caused Houndstooth to send the purchase money to Tingley.

The only relevant evidence in the record shows that Houndstooth took assignment of the purchase contract with CETA before contacting WFG and so was not defrauded by WFG or induced by WFG to enter that contract. The parties never entered a contract of insurance, so that unformed agreement cannot be the basis of a fraudulent-inducement claim. In the Commitment, WFG represented that title "appears to be vested in: CETA Invest Austin," a representation that the record supports. Use of the word "appears" renders the statement not false or actionable on this record. *See Tri-Legends Corp. v. Ticor Title Ins. Co.*, 889 S.W.2d 432, 444 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Houndstooth produced no evidence that it was harmed by WFG's representations in the Commitment because it did not show that it complied with all provisions of the Commitment by disposing of issues affecting title that arose after the Commitment.

14

## 2. Maverick

Houndstooth does not seek reversal of any judgment favoring Maverick on the fraudulent-inducement claim.

Maverick moved for summary judgment on the fraud claim contending that the record establishes that it made no representation on which Houndstooth relied to enter into the transaction or send the escrow funds. Like WFG, Maverick contended that the statement in the Commitment that title "appears to be vested in: CETA Invest Austin" is not actionable.[3] *See id.* Maverick argued that its contact with Edwards occurred only after Houndstooth entered the contracts, including the Commitment, and sent the escrow money. Edwards testified in his deposition that he had conversations with Maverick employees who said that a policy would be issued and recognized that there were issues in the chain of title. When asked "Did those conversations happen after you had given the money for the purchase of the property?" Edwards responded, "Correct." Based on that timing, the representation did not induce Houndstooth to enter the purchase contract, get the Commitment, or send the purchase money. Houndstooth argued at trial that it relied on the filing of the October 6 deed for assurance that it would receive marketable title, but that filing occurred after the sale closed and the funds were transferred. The record supports the summary judgment on the claims as alleged.

---

[3] Houndstooth argues on appeal that it relied on Maverick's representations in the Commitment that the Lot was legally titled to CETA when that was known to be false or was asserted without knowledge of the truth having not researched the title; Houndstooth argues that Maverick made these statements intending that Houndstooth rely on them to move forward and close on the Lot purchase, which it did to its detriment. Houndstooth did not make these arguments in its trial-court pleadings and response to Maverick's motion and thus they cannot form the basis for reversal. *See* Tex. R. Civ. P. 166a(c).

15

### 3.      Tingley

Houndstooth does not seek reversal of any judgment favoring Tingley on its fraudulent-inducement claim.

Tingley moved for summary judgment on the fraud claim contending that it made no representation to Houndstooth and denied that any representation it made was false.  Tingley contended that it did not make any false representations intending Houndstooth to take a particular action and that Houndstooth did not rely on any representation by Tingley.  Tingley contended that it did not perform a title search or issue a title commitment.  In its parallel no-evidence motion, Tingley contended that Houndstooth had no evidence that Tingley made any false representation, that it made any misrepresentation with intent that Houndstooth rely on it, or that Houndstooth relied on any representations made by Tingley.

At trial, Houndstooth relied as it did with other appellees on the Commitment's statement that title "appear[ed]" to be vested in CETA, which we have concluded is no evidence of a misrepresentation.  Houndstooth pointed to Tingley's filing of the deed from CETA to Houndstooth as fraud, but that is not shown to be a representation by Tingley.[4]

Houndstooth has not demonstrated that the trial court erred by granting appellees' motions for summary judgment on Houndstooth's fraud and fraudulent-inducement claims.

## III.      Breach of fiduciary duties

By issue one, Houndstooth contends that there is a genuine issue of material fact on its breach-of-fiduciary-duty claims against WFG, Maverick, and Tingley for their failures to

---

[4] On appeal, Houndstooth cites to other representations allegedly made by Tingley representatives, but that argument was not in Houndstooth's trial-court response to the summary-judgment motion and cannot form the basis for reversal.  *See* Tex. R. Civ. P. 166a(c).

release escrow funds to the proper party (i.e., the record owner of the Lot), to disclose concerns of fraud or irregularities in the transaction, and to properly oversee the closing of the transaction in accordance with industry standards.

### A. Elements

A claim for breach of fiduciary duty requires proof of (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). An escrow agent acts as a neutral party to the transaction and owes a fiduciary duty to both parties. *Capcor at KirbyMain, L.L.C. v. Moody Nat'l Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The escrow agent's fiduciary duties consist of: (1) the duty of loyalty, (2) the duty to make full disclosure, and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it. *Id.* The existence of a fiduciary duty is a question of law. *IQ Holdings, Inc. v. Stewart Title Guar. Co.*, 451 S.W.3d 861, 871 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

### B. Allegations

Houndstooth alleged in its live petition that Maverick, WFG, and Tingley breached the duty to exercise a high degree of care to conserve the deposit and pay it only to those persons entitled to receive it. Houndstooth alleged that appellees are jointly liable because Tingley acted as the escrow agent for Maverick, which acted as agent for WFG.

### C. Motion and arguments

Because Houndstooth's live petition focused on the fiduciary duties of an escrow agent, we will begin our analysis with Tingley, the escrow agent, through whom Houndstooth alleged the liability of alleged principals WFG and Maverick.

17

### 1. Tingley

Tingley agreed it had a fiduciary duty to Houndstooth as escrow agent but noted that it also had a fiduciary duty to the seller of the Lot. Tingley moved for summary judgment on grounds that its duties were limited to the closing and did not extend to title investigation. Tingley contended that Houndstooth's claim that Tingley failed to pay the escrow funds only to the person entitled to them failed because the person entitled to the funds is the seller in the escrow instructions—in this case, CETA. At closing, Tingley disbursed the funds to the person identified as seller; it contended the forgery of the deed from Higgins was not discovered until after closing. Tingley asserted that, as a matter of law, it had no obligation to discover a title defect or to take action that would choose sides between the buyer or seller. Tingley asserted that Houndstooth had no evidence that Tingley breached any of its fiduciary duties.

Houndstooth contended in response that, if Tingley had paid the escrow funds to the person entitled to receive them, Houndstooth would have clear title and a title policy. It argued that Tingley knew or should have known that CETA was not the owner of the Lot and exercised no due diligence to confirm ownership before tendering the funds. Houndstooth contended that there was at least a fact issue regarding what Tingley knew and what representations it made.[5]

Tingley's duties were limited to the closing and did not extend to title investigation. *IQ Holdings*, 451 S.W.3d at 871. In *IQ Holdings*, the court held that the escrow agent's duty of disclosure related only to management of the earnest money and that the escrow

---

[5] On appeal, Houndstooth asserts that a Tingley employee encountered red flags that fraud was brewing and ignored them, failed to disclose them, and failed to act in accordance with industry standards; Houndstooth did not refer to this evidence in its response to Tingley's motion, and it cannot form the basis for reversal on appeal. *See* Tex. R. Civ. P. 166a(c), (i).

agent had no duty to investigate or disclose a title defect. *Id.* at 871-72. Similarly, we conclude here that Houndstooth did not produce evidence that Tingley breached its fiduciary duties as an escrow agent. *See id.*

### 2. Maverick

Maverick moved for summary judgment on grounds that Houndstooth had no evidence to show a breach of the fiduciary relationship as the escrow agent, relying on *IQ Holdings*, 451 S.W.3d at 871-72. Houndstooth responded that Maverick was liable for Tingley's breach of fiduciary duty as escrow agent, asserting the same acts and omissions as those asserted to show Tingley's liability. For the reasons supporting our conclusion that summary judgment for Tingley on this claim was not error, we conclude that the trial court did not err by rendering summary judgment for Maverick on the breach-of-fiduciary-duty claim.

### 3. WFG

WFG moved for summary judgment on grounds that it was not a fiduciary of Houndstooth. WFG contended that there was no evidence in the record that it and WFG had a fiduciary relationship, that WFG participated in escrow functions, or that Maverick acted as WFG's agent in connection with this transaction.

Title insurance is a contract of indemnity that gives rise to an indemnitor–indemnitee relationship. *Id.* at 871. As we have held above, WFG never became Houndstooth's title insurer because the Commitment's requirements were not satisfied. While title-insurance underwriters can be fiduciaries if they act as escrow agents, *id.*, the evidence shows only that WFG did not have or perform any escrow duties. The Texas Agency Agreement between WFG and Maverick expressly stated that Maverick was not appointed WFG's agent for escrow services, while the Closing Services Agreement between Maverick and Tingley provides that

19

"the parties are independent contractors and this Agreement will not establish any relationship of . . . agency between" Maverick and Tingley. Even if an agency theory imposed on WFG fiduciary duties concerning the escrow, we have concluded that the trial court did not err by granting summary judgment on the claims of breach of fiduciary duty by the alleged agents, Maverick and Tingley; there is no breach of fiduciary duty shown for which WFG could be liable.

Houndstooth has not demonstrated that the trial court erred by granting appellees' motions for summary judgment on Houndstooth's breach-of-fiduciary-duty claims.

## IV. Texas Insurance Code violations

By issue six, Houndstooth contends that a genuine issue of material fact exists on its claims against WFG and Maverick for breach of the Texas Insurance Code based on their failure to state material facts necessary to make other statements not misleading concerning the title-insurance policy.

### A. Elements

Houndstooth alleged many violations of the Insurance Code and the DTPA. *See* Tex. Ins. Code §§ 541.003, .061, .151; *see also* Tex. Bus. & Com. Code § 17.46. Some of the allegations specifically addressed WFG and Maverick, while others alleged wrongs generally by "Defendants." Insurance Code § 541.061 provides:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> (1) making an untrue statement of material fact;

20

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; or

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

## B.    Allegations

Houndstooth alleged in its live petition that Maverick and WFG violated Section 541.061 by failing to issue a title-insurance policy after Houndstooth met the conditions of the commitment for title insurance consistent with representations made in the Commitment and with the requirements of Texas Department of Insurance rules.  *See* 28 Tex. Admin. Code § 9.1 (adopting Tex. Dep't of Ins., Basic Manual of Rules, Rates and Forms for the Writing of Title Insurance in the State of Texas, § IV, R. P-61, https://www.tdi.texas.gov/title/titlem4l.html#p61 (last visited February 27, 2023) (requiring title policies to be provided and furnished to the insured within ninety days after receipt by the title company of proof of compliance with the company's Schedule C requirements).  Houndstooth urged that this violation is actionable as an unfair method of competition or unfair or deceptive act or practice.  *See* Tex. Ins. Code §§ 541.003, .151; *see also* Tex. Bus. & Com. Code § 17.46.

## C.    Motion and arguments

### 1.    WFG

WFG moved for summary judgment on grounds that the claims under the Insurance Code fail because Houndstooth did not satisfy all of the Schedule C conditions

21

precedent to issuance of the policy. As it did with respect to the breach-of-contract claim, WFG contended that Houndstooth was required to dispose of "[a]ny defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment." WFG contended that Houndstooth did not dispose of the Fraud Affidavit, a title defect that arose after the issuance of the title commitment.

As discussed above regarding the breach-of-contract claim, the summary-judgment evidence shows that Houndstooth did not resolve the issue concerning title that arose before the policy could be issued. Accordingly, the evidence shows conclusively that, under the terms of the Commitment, WFG was not obligated to issue the title insurance policy and did not violate the Insurance Code by refraining from issuing the policy.

### 2. Maverick

Maverick moved for summary judgment on grounds that a Section 541.061 claim requires evidence that the insurer denied coverage when it had represented there would be coverage. *See Vause v. Liberty Ins. Corp.*, 456 S.W.3d 222, 230 (Tex. App.—San Antonio 2014, no pet.). Maverick argued that, because no policy issued, coverage was not denied. As it did with WFG, Houndstooth argued that Maverick violated the Insurance Code by failing to issue the title insurance policy after representing that it would do so when Houndstooth met the requirements of the Commitment. Even if we interpret the refusal to issue the policy as a denial of coverage, we find no error in the judgment on the Insurance Code claims against Maverick for the reasons we found no error in the judgment on the claims against WFG.

### 3. Tingley

Houndstooth asserted no claims against Tingley related to the Insurance Code and does not allege error in any judgment favoring Tingley on such claims.

Houndstooth has not demonstrated that the trial court erred by granting appellees' motions for summary judgment on Houndstooth's Insurance Code claims.

## V.    Negligence

By issue two, Houndstooth contends that a genuine issue of material fact exists concerning its negligence claims against WFG, Maverick, and Tingley for their failure to exercise reasonable care in their duties to release escrow funds and handle the closing of the transaction.

### A.    Elements

A claim for negligence requires proof of a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Proximate cause requires both cause in fact and foreseeability. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

### B.    Allegations

Houndstooth alleged in its live petition that Tingley, as an agent for Maverick, which was allegedly an agent of WFG, breached its duty to protect and properly dispense Houndstooth's escrow funds by releasing those funds to the wrong party and subsequently refusing to return such funds. Houndstooth also alleged that Maverick breached its duty to oversee the closing and properly dispense the escrow funds. Houndstooth did not claim that WFG was liable in negligence except vicariously under respondeat superior.

C.      **Motion and arguments**

We will address the negligence allegations against Tingley first because both other appellees are alleged to be liable vicariously for Tingley's acts or omissions.

1. **Tingley**

Tingley moved for summary judgment on grounds that it was not negligent because it had no duty to discover a forged deed or to protect Houndstooth from the criminal acts of Crawford and William. It contended that there was no duty for a closing agent to conduct a title search and independently determine whether a deed is forged or legitimate. Tingley contended that Houndstooth had no evidence to support the allegations that Tingley had the duties alleged or that Tingley breached any of its duties as escrow agent.

Houndstooth responded by reiterating that Tingley had a legal duty to protect and properly dispense the funds in escrow and breached that duty by releasing the funds to CETA and by not returning them to Houndstooth. Houndstooth urged that there was at least a fact issue as to whether appellees violated "the duty of care they accepted when they undertook to participate, in whatever capacity this Court finds they participated, in this transaction." Houndstooth urged that "for real estate transactions to work, escrow agents and title companies must have SOME duty of care to those from whom they accept purchase money" and that "[p]aying that money to the wrong party must certainly be a breach of that duty, and any suggestion otherwise is both a misstatement of the law, disingenuous, and nonsensical."[6]

---

[6] Houndstooth raises theories on appeal not raised in its summary-judgment response—contending that Tingley ignored signs of fraud in documents in the closing file—but those allegations are outside the scope of an escrow agent's duty. *See IQ Holdings, Inc. v. Stewart Title Guar. Co.*, 451 S.W.3d 861, 871 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

24

As discussed above concerning the fiduciary-duty claim, there is no legal duty for a closing agent to conduct a title search and independently determine whether a deed is forged or legitimate. *IQ Holdings*, 451 S.W.3d at 871-73. In *IQ Holdings*, the court held that the escrow agent did not owe a duty to the buyer to provide it with title coverage beyond the scope of the written policy or to disclose risks that the policy did not cover. *Id.* at 873. Here, the title-insurance policy did not issue, and the record does not contain evidence that Tingley had broader duties than did the escrow agent in *IQ Holdings*. Tingley undisputedly provided the funds to the seller as instructed. Houndstooth did not produce evidence that Tingley had the duties Houndstooth alleged or that Tingley violated the duties it had.

### 2. Maverick

In its supplemental motion for summary judgment, Maverick contended that there was no agency relationship between Tingley and Maverick because the Closing Service Agreement expressly provided that Maverick and Tingley are independent contractors. Maverick also contended that Houndstooth had no evidence that Tingley was Maverick's agent or that Maverick proximately caused damages to Houndstooth.

In response, Houndstooth reiterated the allegations that Maverick was vicariously liable for Tingley's negligence as well as liable for breaching its own duty to oversee the closing and properly dispense the escrow funds. It argued that Maverick had a duty to exercise reasonable care to examine the validity of title, assure proper conveyance of the Lot, and discover the fraud before sending the purchase money to the fraudulent seller.

Houndstooth produced no evidence that Tingley was Maverick's actual or apparent agent. Rather, the agreement between Maverick and Tingley expressly provides that the parties are independent contractors and that the agreement does not establish any agency

relationship. Apparent authority arises either from (1) a principal's knowingly permitting an agent to hold himself out as having authority, or (2) a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). The standard is that of "a reasonably prudent person, using diligence and discretion to ascertain the agent's authority." *Id*. at 182-83. Apparent authority is based on estoppel, and only the conduct of the principal in leading a third party to believe that the agent has authority may be considered. *Id*. at 182. Declarations of authority by the alleged agent, without more, do not establish either the existence or the scope of the alleged authority. *Id.* at 183-84. Rather, the reviewing court looks to "acts of participation, knowledge, or acquiescence by the principal." *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998). Houndstooth did not produce any evidence of apparent authority with its response. The first contact between it and a Maverick representative shown in the evidence is a discussion that occurred after the closing which is no evidence that Maverick led Houndstooth to believe that Tingley was Maverick's agent.

Houndstooth produced no evidence that Maverick proximately caused damages to Houndstooth. While Houndstooth produced evidence of damages, it did not produce evidence tying those damages to Maverick's acts or omissions in violation of any duty alleged in the live petition to oversee the closing and properly dispense the funds in escrow. Houndstooth's arguments about Maverick's alleged general duty to supervise the transaction focus on Maverick's failure to conduct a title search that revealed the fraudulent deed. But any investigation regarding title by Maverick is undertaken to help the title-insurance company decide whether to insure the risk, not for the benefit of the purchaser. *See Hahn v. Love*,

26

394 S.W.3d 14, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Houndstooth did not produce evidence that Maverick breached a duty that caused damages to Houndstooth.

### 3. WFG

In its supplemental motion for summary judgment, WFG contended that it was not vicariously liable for the negligence of other defendants in handling the escrow services. As we have concluded that the trial court did not err by granting summary judgment on Houndstooth's claims for negligence against both Tingley and Maverick, there is no negligence for which WFG can be liable vicariously under respondeat superior. We conclude that the trial court did not err by granting WFG summary judgment on Houndstooth's negligence claims against WFG.

Houndstooth has not demonstrated that the trial court erred by granting appellees' motions for summary judgment on Houndstooth's negligence claims.

## VI.  Other claims

Based on our resolution of the above issues, we need not address issue seven concerning the availability of lost-profits damages, any remaining arguments concerning agency through actual or apparent authority, or the cross-claims between Maverick and Tingley. *See* Tex. R. App. P. 47.1. Because Houndstooth did not show error in the take-nothing judgments on the claims against each individual appellee, there is no basis for or reason to consider liability under vicarious liability through respondeat superior and no basis for an award of lost profits. Similarly, there is no reason to consider Maverick's cross-appeal of the judgment on its indemnity cross-claims against Tingley because there is no liability to indemnify.

27

**CONCLUSION**

We affirm the trial court's judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:  February 28, 2023